JOSEPH P. SCHUREMAN, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Respondent.

**St. Louis Court of Appeals, March 26, 1901.**

1. **Damages: CONTRACT OF SHIPMENT OF LIVE STOCK.** In the case at bar, the contract of shipment provided that the animals should be in the sole charge of the persons in whose charge the plaintiff put them, namely, his son and Seeler, who were to attend to them, the defendant company not being responsible for lack of attention or care.

2. ———: ———. This of course would not exempt the defendant from liability for a wrongful act of one of its employees, which injured or killed the stock, but it ought not to be held liable on a mere conjecture that such an act was committed.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Paxson & Clark* for appellant.

The court erred in giving the instruction that plaintiff could not recover.   Haynes v. Railroad, 54 Mo. App. 585; Hance v. Express Co., 48 Mo. App. 183; Witting v. Railroad, 101 Mo. 631.

*Edward S. Robert* and *Douglas W. Robert* for respondent.

(1)    Where the shipper takes a receipt for goods limiting the liability of the carrier, knowing its terms and intending to assent to its restrictions, he is bound by it.    Meyer v. Railroad, 90 Mo. 98; Atchison v. Railroad, 80 Mo. 213; Railroad v. Cleary, 77 Mo. 634; O'Bryan v. Kinney, 74 Mo. 125; Vaughn v. Railroad, 78 Mo. App. 639.    (2)    The recitals in a contract limiting the liability of a common carrier are prima facie evidence thereof, and without further evidence become conclusive.    Kellerman v. Railroad, 136 Mo. 177. (3) Where the petition charges specific acts of negligence, the evidence and right of recovery will be confined to the negligence so charged.    Feary v. Railroad, 162 Mo. 75; Chitty v. Railroad, 148 Mo. 64; McCarty v. Hotel, 144 Mo. 397.

GOODE, J.—The complaint in this action, which is one to recover damages on account of the loss of certain live stock while being carried by the respondent, assigns two acts of negligence:   first, that the defendant shipped the stock in a box car instead of a stock car; second, that when the car containing the stock reached Galesburg, Illinois, and while standing in the respondent's yards there, an agent or employee of the respondent closed the side doors of the car, rendering it practically air-tight.   Three horses and two mules died from suffocation and overheating.

The first ground of recovery was withdrawn on the argu-

ment, it appearing that the plaintiff's son, who was in charge of the stock, had consented to its shipment in a box car.

At the trial the jury were instructed to return a verdict in favor of the defendant.

The appellant contends there was evidence for the jury in support of the allegation that the doors of the car were closed by some employee of the company. There was a contract limiting, in some respects, the common-law liability of the carrier. The action was based on a specific allegation of negligence, and there must have been evidence tending to prove it, or the plaintiff was properly nonsuited. But direct proof was not imperative: any circumstance which would fairly authorize its inference, entitled the appellant to go to the jury. The evidence, whether direct or circumstantial, must have tended to support the act charged in the complaint, to-wit: that while the car of stock was standing in defendant's yards at Galesburg, an agent or employee of the company closed the doors. Chitty v. Railroad, 146 Mo. 64; McCarty v. Hotel Co., 144 Mo. 397; Dlaughi v. Railroad, 139 Mo. 291; McManamee v. Railroad, 135 Mo. 447; Atchison v. Railroad, 80 Mo. 213; Waldhier v. Railroad, 71 Mo. 514. The evidence neither positively nor inferentially tends to prove that the car doors were closed by a servant of the company. It appears they were open for a space of two feet on either side of the car when examined at three different stations between Rock Island, the point of shipment, and Galesburg. They were open, too, when the latter place was reached. The car was put on a siding there, where it remained for an hour and a half, during which interval no one observed it, so far as is disclosed. At the end of that time, Morris Seeler, who was travelling with the shipment for the plaintiff went to look at the stock, found the doors closed, opened one and hot steam off the animals poured out. They were as wet, he says, "as if they had swam the river and some

of them were down." The doors may have been closed by the company's servant, by some stroller, or more probably by the jarring of the car in switching. True, Seeler says the doors were hard to move. There was also evidence tending to prove the company had a rule that no one but employees were permitted in the yards. We regard these circumstances as altogether too slight to authorize an inference that an employee shut the doors. If there was a rule of that kind, it was violated in this very instance, because Seeler visited the car.

The contract of the shipment provided that the animals should be in the sole charge of the persons in whose charge the plaintiff put them, namely, his son and Seeler, who were to attend to them, the company not being responsible for lack of attention or care. This, of course, would not exempt the defendant from liability for a wrongful act of one of its employees which injured or killed the stock, but it ought not to be held liable on a mere conjecture that such an act was committed.

If the case had been submitted to the jury and a verdict returned in appellant's favor, it must have been set aside from lack of evidence to support it. The court, therefore, rightfully refused to submit it.

The judgment is affirmed. All concur.