THE STATE, EX REL. JOHN MCBRIDE, V. MICHAEL D. LONG.

Clerks District Court: ELECTION. Under the provisions of section 7 of the election law, which provides that in each county having a population of 8,000 inhabitants there shall be elected in the year 1879 and every four years thereafter a clerk of the district court, etc., a county which in 1883 contained less than 8,000 inhabitants at the time the census was taken in that year, but more than that number thirty days before the general election, was authorized to elect a clerk of the district court.

ORIGINAL action in nature of *quo warranto.*

*H. M. Uttley* and *M. P. Kinkaid,* for the relator.

*W. H. Munger,* for the respondent.

MAXWELL, J.

This is an action in *quo warranto* to oust the defendant from the office of clerk of the district court of Holt county and instate the relator therein. By the census taken in the spring of 1883 the population of that county was found

to be 7,443, which it is claimed by the relator was largely augmented by immigration during the summer of that year, so that thirty days prior to the election of 1883 the population exceeded 8,000. No election for clerk of the district court was had in that county in 1883, but in the year 1884 the relator was elected to fill the vacancy, receiving a majority of all the votes cast in the county. Sec. 7 of the election law provides that, "in each county having a population of 8,000 inhabitants or more there shall be elected in the year 1879 and every four years thereafter a clerk of the district court in and for such county; and in each county having a population of less than 8,000 inhabitants the county clerk shall be *ex officio* clerk of the district court," etc. Comp. Stat., Chap. 26. In 1869 an act was passed by the legislature to provide for the enumeration of the population and registration of the births and deaths in the state. The blank forms given in the act relate almost entirely to births and deaths; and it is apparent from a comparison of the several sections that the collection of facts as to the number of births and the causes of death was the primary object of the legislature in passing the act. In no statute of the state, so far as the writer is aware, is the census taken under this act made the basis for any action of the legislature, or of any municipal or other corporation. Indeed the twelfth subdivision of the fifteenth section of the act creating cities of the first class expressly authorizes such cities "to provide for and cause to be taken an enumeration of the inhabitants of the city." Comp. Stats., Ch. 13, Laws of 1883, 91. The annual census not being made by statute the basis upon which the population of a city or county at an election succeeding the taking of the same is to be estimated, there would seem to be no authority for this court to inject into the election law the words "as returned by the census taken in 1883." The language of the election law is general, "that in each county having 8,000 inhabitants or more there shall be elected,"

etc. This, in the absence of any restriction, would seem to apply to the time the election was called, and not to the time the census was taken. It is well known that in some of the new counties of the state thousands may be added to their population by immigration in a single year, and this largely during the summer season. It is but reasonable to suppose that this fact was taken into consideration by the legislature in passing the act, hence its general language. The cities and villages of the state, as well as counties, are classified according to population. Thus, cities containing more than twenty-five thousand inhabitants are cities of the first class. Comp. Stat., Chap. 13. And cities of the second class having more than ten thousand inhabitants. Laws of 1883, Ch. XVI. Sec. 2 of this act provides that, "Whenever any city shall hereafter have attained a population of ten thousand inhabitants, and such fact shall have been duly ascertained and certified by the mayor of such city to the governor, the governor shall by proclamation declare such city to be a city of the second class," etc. It is very clear that the mayor of such city is not required to rely upon the census taken under the statute, but may ascertain that fact in any other legitimate mode. So towns containing more than fifteen hundred inhabitants and less than ten thousand are to be cities of the second class, while towns containing not less than two hundred nor more than fifteen hundred may be incorporated as villages. Laws of 1881, Ch. 22. In none of these cases is the census referred to as the criterion for determining the population, while in most of them it is apparent that it is not. The inquiry may be made by what means is the population of a county or city to be ascertained if not exclusively by the census? The answer is, it is to be determined like any other question of fact, by the best evidence that can be obtained. The votes polled at the election in 1883, when multiplied by the well-known ratio of population to the number of voters in a county, is evidence tending to prove the number of

inhabitants. The question as to the mode of proving the population of a county does not arise in this case, because it is conceded if the census is not to be taken as a basis that the county contained more than 8,000 inhabitants at the time of the election. As in our view the relator was legally elected to the office in controversy, and is entitled to the possession of the same, judgment will be entered ousting the defendant from said office and instating the relator therein.

JUDGMENT ACCORDINGLY.

REESE, J., concurs.

COBB, CH. J., dissents.