VINCENT KOKES V. STATE OF NEBRASKA, EX REL. FRANK
KOUPAL.

FILED SEPTEMBER 23, 1898.   No. 9921.

1. **Mandamus:** TITLE TO OFFICE.  The title of a party to a public office
   is not proper matter of issue or trial in an action of mandamus.

2. ———: CERTIFICATE OF ELECTION.  In an action of mandamus to
   force the proper officer to issue to the relator a certificate of his
   election to fill an office, the question of the propriety or validity
   of an election at the alleged time to fill the office may be liti-
   gated.

3. **Evidence:** JUDICIAL NOTICE: CENSUS.  Courts will take judic'al no-
   tice of a United States census and its results, a school census and
   its results; also of an authorized election and its results, and the
   number of votes cast thereat.

4. **Sufficiency of Evidence:** REVIEW.  If the evidence is wholly insuf-
   ficient .to sustain the findings of the trial court, the resultant
   judgment must be reversed.

5. **Finding as to Population of County.**  Evidence herein examined
   and determined insufficient to support the findings.

ERROR from the district court of Valley county.  Tried
below before THOMPSON, J.  *Reversed.*

*Clements Bros.,* for plaintiff in error.

*Charles A. Munn* and *A. Norman,* contra.

HARRISON, C. J.

In this, an action for mandamus, the relator asked the
issuance of the writ against the respondent, as county
clerk of Valley county, and by it his direction to deliver
to relator a certificate of election to the office of clerk of
the district court of said county.  A trial of the issues
joined resulted in a judgment in favor of the relator, and
the cause is presented to this court for respondent by
petition in error.

In 1879 the legislature enacted: "In each county hav-
ing a population of eight thousand (8,000) inhabitants

or more, there shall be elected in the year eighteen hundred and seventy-nine (1879), and every four years thereafter, a clerk of the district court in and for such county, and in each county having a population of less than eight thousand (8,000) inhabitants, the county clerk shall be ex-officio clerk of the district court and perform the duties devolving upon the officer by law." (See Compiled Statutes 1897, ch. 26, sec. 7.) This was an authority for the election of clerks of the district court in counties of 8,000 inhabitants or more in 1879, and thereafter in the counties of requisite number of inhabitants, at times of election occurring at intervals of four years. (*State v. Whittemore*, 11 Neb. 175; *State v. Stauffer*, 11 Neb. 173.) In the case last cited it was said: "The act approved March 1, 1879, authorizing an election of clerks of the district court in the year 1879, and every four years thereafter, in counties containing not less than eight thousand inhabitants, does not authorize an election of such clerks in other counties during the intervening years upon attaining that population." In 1897 a bill was introduced in the senate, and passed that body, and is embodied in the Session Laws of the year named as chapter 28, and also appears in the Compiled Statutes of 1897 as sections 8*a* and 8*b*, chapter 26, page 556. In the note on said page it is said in relation to the bill: "It is said not to have passed the house." The trial court determined in this case that it did not. It appears that the county clerk of Valley county, when about to prepare and issue notices, etc., for the election in the fall of 1897, asked the advice of the county attorney in regard to whether he should include in the notices, etc., the office of clerk of the district court, and was advised that it would be proper and better to do so. He followed the advice, and the relator was nominated for the office of the clerk of the district court, and received the highest number of the votes cast for the several nominees for that office. After the canvass, etc., of the election returns, the relator demanded of the respondent that he be issued a certifi-

cate of election, which the respondent refused; and to compel compliance with his request the relator instituted and prosecuted this action. As we have before stated, the trial court decided that the act of 1897 did not become a law, and with that adjudication the plaintiff in error has no quarrel. Furthermore, it is conceded for the relator that that decision was right; and it is further stated in the brief for relator that he makes no claim herein based on the existence of the act of 1897 as a law. His assertion is that in 1895 the county of Valley had 8,000 inhabitants or more, and there should then have been elected a clerk of the district court; that there was a vacancy in that office in 1897, and an election to fill the same was proper. Of the findings of the trial court were the following:

"Was there a fixed ratio or number in the state of Nebraska by which the whole number of votes cast at any general election in a county may be multiplied to determine the population of said county at this time?

"Answer. Not for all cases (by statute), but by comparison we can arrive at a fair conclusion.

"If so, what is the ratio or number?

"Answer. The number which I would use in this case, if deciding it upon that alone, is 5 when based upon a comparatively full vote, and $5\frac{1}{2}$ when based upon a comparatively light vote.

"Does such ratio or number apply to the whole number of votes cast at said election, or to the whole number of voters residing in said county at the said time?

"Answer. To the whole number of votes cast."

"Findings of law:

"Is there a legal or fixed ratio by which the whole number of votes cast at an election in a county may be multiplied to determine the population of said county at that time?

"Answer. I think the ratio I have given above is legal, but I do not think it is fixed.

"If so, what is said ratio?

"Answer. The ratio that I would use is 5 for a comparatively full vote and 5½ for 'off years,' with a comparatively light vote.

"Does said ratio apply to the whole number of votes cast at said election, or to the whole number of voters in said county at that time?

"Answer. The whole number of votes cast.

"The court further finds facts as follows:

"That Valley county is now neither a newly settled county or community, nor an old, settled one.

"That if this case was to be decided alone upon the ratio between the votes and population, the ratio that the whole vote bears to the whole population of the state, at any election, is the proper ratio to use for Valley county in this case.

"That there has been an increasing population in Valley county for over twenty years last past, except 1890, when it was nearly stationary, and in the fall of 1894 and the spring of 1895 when there was some moving away from the county on account of drouth.

"That a great many of those that went away have been ever since steadily returning; and that the population of Valley county is now the largest that it has ever been, and that said county of Valley is now, and has been ever since and prior to the election in the fall of 1895, a county containing 8,000 inhabitants, and was at that time, and has since that date been, entitled to elect a clerk of the district court, as one of the officers within and for said county."

One question that is noticed in the argument for plaintiff in error, and which we deem it well to settle, is in relation to whether the litigation before us involves the trial of the title to an office. If it does, then it cannot be adjudicated in an action of mandamus. (*Anderson v. Colson*, 1 Neb. 172; *State v. Plambeck*, 36 Neb. 401; *McMillin v. Richards*, 45 Neb. 786.) The question herein was not the relator's title to an office, but his right to the evidence of his election to an office; and, if the office

had no existence at the time, as an office to be filled by
an election, no right to a certificate of election to fill it
could arise.   Without an office to fill, no recognizable
claim could be asserted to receive the certificate evi-
dencing the relator's election or right to fill it.   Whether
the office of clerk of district court could be filled by
election was determinable by mandamus, and a trial of
such question could not be termed a trial of the title to
an office.   (*State v. Whittemore*, 11 Neb. 175; *State v.
Stauffer*, 11 Neb. 173; *Van Horn v. State*, 46 Neb. 62;
*State v. Aldermen of Pierce City*, 3 S. W. Rep. [Mo.] 849.)

The only further point for discussion—and it is stated
for relator, by counsel, in the brief filed, to be the only
matter of contention in this case—is the sufficiency of
the evidence, viewed in connection with the matters of
which courts take judicial notice, to sustain the findings
and judgment of the trial court.   In the case of *State v.
Long*, 17 Neb. 502, wherein the same section of the statute
was under examination as is here involved, it was said:
"The annual census not being made by statute the basis
upon which the population of a city or county at an elec-
tion succeeding the taking of the same is to be estimated,
there would seem to be no authority for this court to
inject into the election law the words 'as returned by the
census taken in 1883.'   The language of the election law
is general, 'that in each county having 8,000 inhabitants
or more there shall be elected,' etc.   This, in the ab-
sence of any restriction, would seem to apply to the time
the election was called, and not to the time the census
was taken.   It is well known that in some of the new
counties of the state thousands may be added to their
population by immigration in a single year, and this
largely during the summer season.   It is but reasonable
to suppose that this fact was taken into consideration
by the legislature in passing the act; hence its general
language.   The cities and villages of the state, as well
as counties, are classified according to population.   Thus,
cities containing more than twenty-five thousand inhab-

itants are cities of the first class (Compiled Statutes, ch. 13), and cities of the second class having more than ten thousand inhabitants (Session Laws 1883, ch. 16). Section 2 of this act provides that 'whenever any city shall hereafter have attained a population of ten thousand inhabitants, and such fact shall have been duly ascertained and certified by the mayor of such city to the governor, the governor shall, by proclamation, declare such city to be a city of the second class,' etc. It is very clear that the mayor of such city is not required to rely upon the census taken under the statute, but may ascertain that fact in any other legitimate mode. So towns containing more than fifteen hundred inhabitants and less than ten thousand are to be cities of the second class, while towns containing not less than two hundred nor more than fifteen hundred may be incorporated as villages. (Session Laws 1881, ch. 22.) In none of these cases is the census referred to as the criterion for determining the population, while in most of them it is apparent that it is not. The inquiry may be made, by what means is the population of a county or city to be ascertained if not exclusively by the census? The answer is, it is to be determined, like any other question of fact, by the best evidence that can be obtained. The votes polled at the election of 1883, when multiplied by the well-known ratio of population to the number of voters in a county, is evidence tending to prove the number of inhabitants." It is true that the foregoing extract was merely *arguendo* and was *obiter*, for, as stated in the decision, the method of inquiry or proof of the number of inhabitants was not of the questions in the case; but it contains some very pertinent observations bearing upon the question in controversy here. In 1887 an act was passed by the legislature by which the office of register of deeds was created. The legislature of 1889 amended the first section of that act, and as amended it read as follows: "At the general election in the year 1889, and every four years thereafter, a register of deeds

shall be elected in and for each county having a popu-
lation of eighteen thousand and three (18,003) inhabit-
ants or more, to be ascertained by the census of 1885
and each state and national census thereafter, who shall
give bond, with sufficient sureties thereon, to be approved
by the county board, in the penal sum of ten thousand
($10,000) dollars, conditioned for the faithful perform-
ance of his duties, and such register of deeds shall have
all the power, and perform all the duties relative to all
papers, writings and instruments pertaining to real es-
tate heretofore enjoined by law upon county clerks, and
shall receive the compensation allowed by law therefor,"
etc. (Compiled Statutes 1889, ch. 18, sec. 77$a$.) By the
state census of 1885 Richardson county was shown to
have a sufficient number of inhabitants to entitle it to a
register of deeds, but by the national census of 1890 the
population fell below the requisite number, and in the
decision in the case of *State v. Lewis*, 38 Neb. 191, it was
held that the county was not entitled in 1893, or subse-
quent to 1890, to a register of deeds, and would not be
until it was established by a state or national census
that the county contained the number of inhabitants
specified in the act. In that case the census governed,
because it had been made by statute the element or factor
by which the population of the political subdivision
should be determined, and that decision cannot assist us
in the present action.

It may be said of the evidence introduced that it did
not, in and of itself, establish the population of Valley
county at the time of the election of 1895 at any certain
number, and did not therefore, in and of itself, furnish
a measure by which the population—the main question at
issue in the case—could be determined. It may also be
said that the testimony of the various witnesses was
composed, and necessarily to a large extent, of opinions,
general in their character; but there was, as to matters
of fact, no appreciable conflict; and it was established
that during the years of 1894 and 1895, by reason of

climatic conditions which rendered agricultural pursuits
almost entirely of no financial or material avail, and
incidentally operated detrimentally upon all other avo-
cations and lines of business, the population of the county
was decreased quite a considerable number, some of the
persons who removed during that time doing so tem-
porarily, and others permanently; but the population
was less during those years than immediately prior
thereto or since. It also developed that there was quite
an increase in the population during 1896. It was ad-
mitted of record, although objected to as incompetent,
irrelevant, and immaterial, that "There were cast at the
general election in Valley county in the year 1890, 1,515
votes; that there were cast in the year 1891 at the gen-
eral election in said county, 1,434 votes, and that the
total vote cast for any county or state officer was 1,386;
that there were cast in the year 1893 at the general elec-
tion held within and for said county, 1,542 votes; that
there were cast in the year 1894 at the general election
held within and for said county, 1,463 votes; that there
were cast at the general election held within and for said
county in the year 1895, 1,492 votes; that there were
cast at the general election held within and for said
county in the year 1896, 1,669 votes; that there were cast
at the general election held within and for said county
at the general election for the year 1897, 1,541 votes,—
all of which votes for the several years were duly can-
vassed by the proper canvassing officers of said county;
that there were cast and counted in said county for the
year 1892 for county and state officers 1,522 votes, and
that that was the highest number of votes cast for any
candidates at that election; and that the total vote cast
for said year of 1892 is not shown by the records of said
county, and that the same is not now agreed upon as to
the total number of votes. It is further agreed that the
total number of votes as given heretofore is the total
number of votes cast in said county for each of the said
years, except that for the year 1892; that there were cast

and counted in said county for state and county officers at the general election held therein in the year 1888, 1,539 votes, the same being the highest number of votes cast and counted for any office at said election." It will doubtless be remembered that in the excerpt we have made from the opinion of MAXWELL, J., in the case of *State v. Long, supra*, it was observed that the votes polled at an election, when multiplied by "the well-known ratio" of population to the number of votes, is evidence which tends to prove the number of inhabitants. What the "well-known ratio" is, was not specifically stated. I had always believed it was, by popular voice, fixed at 5, and yet think that the majority entertain a belief that such is the ratio; but a limited experience in investigation in the realm of popular opinion on the ratio to which we have just referred has led me to conclude that there is not an entire agreement or a uniformity of knowledge on the subject. The opinion of the individual in regard to the ratio and its amount, I conclude, is governed by what in fact, or supposably, it was stated to be in the state or political subdivision in which the individual resided when knowledge was acquired or supposed to have been obtained on the subject. I have been informed that it is 4, and also that it is 6; and am forced to believe, as before stated, that there is some lack of agreement and uniformity of belief and popular knowledge or information in regard to the ratio, if, indeed, a general one exists. If it was a fact of general notoriety or knowledge, the courts would take judicial notice of it; but the question was not raised in the case, and we need not decide it.

Of the matters of which it is insisted the courts should take judicial notice, is the United States census, the school census taken under the authority of a statute of the state and by the officers empowered for such purpose, the state and county elections, and the results of each and all of them. We think this insistence is correct. Courts will take judicial notice of the things enumerated, and the results. From the results of one or the

other census to which we have referred—that of the
United States used being the one of 1890—and also the
results of elections, certain ratios or percentages were
obtained by mathematical processes, and, by applica-
tion to certain figures or conditions existent of the rela-
tive affairs in Valley county in the year 1895, argued to
show that the population was or was not the requisite
8,000. Whether it tended to show that it was or was
not, depended to some considerable extent on who did
the arithmetical work—counsel for relator, or counsel
for respondent. Both, in briefs filed, have set forth ex-
tended calculations of the nature to which we have re-
ferred, and have based arguments thereon. We will
notice some of these. In one the census of school chil-
dren is used in connection with the whole population of
the county as shown by the United States census of 1890.
In such census Valley county was accredited with 7,092
inhabitants, and in the brief for relator it is stated: "Ac-
cording to the census reports of 1890, Valley county had
a population of 7,092. The same report gave the num-
ber of children of school age in Valley county as 2,189.
It would therefore appear that in the year 1890 the
school population of Valley county constituted 31 per
cent of its entire population." It is then, on the assump-
tion that the per cent would be the same in 1894, further
said that the number of school children in the county on
December 31 of the year last mentioned was 2,924, and,
if 31 per cent of the whole population, the county then
had 9,400 inhabitants. An examination of the report
of the national census of 1890 discloses that in Valley
county there were 2,716 persons of school age, and the
per cent of the population was a fraction more than 38;
and if it was the same in 1895, there were not 8,000 in-
habitants in the county. By the school census taken dur-
ing June and July, 1890, the number of school children
was shown to be 2,667. By the use of this number we
obtain the per cent of 37.6, and the population less than
8,000. Further than this, the number of school children

used by counsel in the calculation set forth in the brief was of June and July, 1894, and by law there was another enumeration of persons of school age taken in June and July, 1895, which was shown in the report of the state superintendent of schools of January 1, 1896, from which it appears that there were then of such persons in Valley county 2,491, and on the assumption, as said before, that the per cent was the same as in 1890, the population was less than 8,000. In another method of calculation which is used by the parties in their briefs the population of the state as shown by the census of 1890, which was 1,058,910, is taken, and this in connection with the vote of the state is used, and the ratio obtained. The vote of the state in 1890 was 214,090 and the ratio was less than 5. It is assumed that the population of the state increased from 1890 to 1895, or did not decrease, and that the same was true of Valley county; and the figures 1,058,910 are taken to represent the total number of inhabitants in 1895, and the vote of the latter year is employed, and a ratio obtained of 5.7. But, on the other hand, we are asked to notice that if the number of inhabitants in Valley county in 1890, as shown by the national census (7,092), is used, and the vote of the county taken to obtain the ratio—and this, if the method is employed at all, would seem proper, as it is the population of the county which we desire to obtain—then in 1890 there were 1,515 votes, and the ratio less than 5. In 1891 the vote was 1,434, and the ratio a trifle less than 5. In 1892, vote, 1,592; ratio less than 5. In 1893, vote, 1,542; ratio less than 5. In 1894, vote, 1,463; ratio below 5. In 1895, vote, 1,496; ratio less than 5; and the average ratio for these years less than 5.

There are other methods contained in the briefs, but in all of them are assumptions or unallowable inferences which make them somewhat unsatisfactory as a basis for settlement of the matters in litigation. Then many of them lead at best to rather unreliable approximations. Courts may not assume the existence of something and

then take judicial notice of it as a fact. A thorough examination and consideration of all the evidential matters herein, inclusive of such as it is contended judicial notice should and will bê taken, forces us to the conclusion that there is not of such evidence and allowable inferences therefrom, sufficient to sustain the findings of the trial court in relation to the population of Valley county in 1895, and the resultant judgment must be reversed and the case remanded.

REVERSED AND REMANDED.

SULLIVAN, J., and IRVINE, C.

We concur in the foregoing opinion, but, to avoid any inference as to the competency of such evidence as was offered, we wish to add that in our opinion the only competent proof of population in such cases is a census. The question not being essentially involved, we do not care to state our reasons at length, but might say that one of them is that the legislature cannot be presumed to have contemplated a resort to other evidence, which the opinion of the Chief Justice shows to be wholly conjectural.

RYAN, C., dissenting.

I dissent from the views expressed by HARRISON, C. J., for the reasons I shall now briefly state. The alternative writ of mandamus which issued from the district court of Valley county required the county clerk to issue to the relator a certificate showing his election to the office of clerk of the district court of said county, or show cause why such certificate should not issue. The return to this writ presented several issues, but on the trial the stipulations of counsel established all the facts entitling the relator to the writ prayed, except, as contested by the respondent, that, as Valley county contained less than 8,000 inhabitants, there was no independent office of clerk of the district court in that county. As the respondent was county clerk he was ex-officio clerk of the district court, if there were less than 8,000

inhabitants in Valley county. His denial of the exist-
ence of that number of inhabitants presented the issue
whether he or the relator was clerk of the district court
of said county. In effect, as I understand the case, the
controversy is as to the title to a public office, and it has
been repeatedly held that the title to such an office can-
not be tried by mandamus. (*Anderson v. Colson*, 1 Neb.
172; *State v. Plambeck*, 36 Neb. 401; *McMillin v. Richards*,
45 Neb. 786.) It was the duty of the respondent to issue
the certificate showing the relator's election in accord-
ance with conceded facts. The question attempted to be
litigated in this case should, I think, be presented at the
proper time and by proper parties in quo warranto pro-
ceedings. (Compiled Statutes, ch. 71; *State v. Plambeck*,
*supra; State v. Jaynes*, 19 Neb. 164.) The judgment of the
district court, therefore, in my opinion should be
affirmed.