## HANOVER *v.* BOYD.

*(Knoxville,* September Term, 1938.)

Opinion filed November 21, 1938.

WM. R. HARRISON and BENNETT H. HURT, both of Memphis, and THOMAS H. MALONE, of Nashville, for appellant.

CHARLES M. BRYAN, JULIAN C. WILSON, PHIL M. CANALE, MARION G. EVANS, HAMILTON E. LITTLE, WILLIAM GERBER, F. H. GAILOR, W. PRESTON BATTLE, JR., and SAMUEL S. PHARR, all of Memphis, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Joseph Hanover contesting the right of Marion S. Boyd to hold the office of District Attorney-General for the Fifteenth Judicial Circuit. The bill was filed under sections 2123 *et seq.*, of the Code providing for the contest of elections of judges, chancellors and district attorneys. In the alternative, the bill sought a declaration of rights of the parties under the declaratory judgments statute, Code sections 8835 *et seq.*, if the court was of opinion the bill was not maintainable in the first aspect. The case was heard on demurrer. The court below entertained the bill in the latter aspect only —as one for a declaratory judgment,—and made a declaration adverse to complainant, from which decree he appealed.

The facts disclosed by the bill are that W. T. McLain was Attorney-General of the Fifteenth Judicial Circuit, elected in 1934 for a term of eight years. He died in the

forenoon of July 4, 1938. The next biennial election recurred on August 4, 1938. Although the Governor was apprised of McLain's death, he refused to order a special election to fill the vacancy on August 4, 1938, being advised that such date—the date of the next biennial election—did not recur more than thirty days after the happening of the vacancy. The Governor, however, on July 7, 1938, appointed the complainant to hold this office until his successor was "elected or appointed and qualified."

It further appears that in another proceeding, hereafter again referred to, the Chancery Court of Shelby County, by a mandatory injunction issued July 18, 1938, required the county election commissioners to advertise and hold a special election on August 4 following, to select a District Attorney-General to fill McLain's unexpired term.

■ This election was held, and from the official returns of the Election Commissioners of Shelby County filed with the Secretary of State, we judicially notice that defendant Boyd received 39,234 votes and Tom Collier 5,092. Complainant Hanover was not a candidate in this election.

The bill averred that the election was illegally held and void, gave Boyd no title to the office, and that complainant Hanover was entitled to hold over until a successor was elected at the biennial election in 1940 and was duly qualified.

Before going to the merits of the case, there are two preliminary matters of which we should dispose.

■ First, it is said that the court below erred in declining to treat this suit as an election contest and we think this is true. The bill makes out a case of that nature under repeated decisions of this court. *Stone* v.

*Edmondson,* 168 Tenn., 698, 80 S. W. (2d), 665; *Zirkle* v. *Stegall,* 163 Tenn., 323, 43 S. W. (2d), 192; *Hogan* v. *Hamilton County,* 132 Tenn., 554, 179 S. W., 128; *Maloney* v. *Collier,* 112 Tenn., 78, 83 S. W., 667.

■ Second, the court below is criticized for taking notice of the official returns of this election. We think this criticism to be without justification. Under sections 1913 and 1914 of the Code, election returns are made to the Secretary of State and these returns recorded in a bound volume. Such returns can be noticed just as any other permanent official record. *In re Denny,* 156 Ind., 104, 59 N. E., 359, 51 L. R. A., 722; *Casey* v. *Bryce,* 173 Ala., 129, 55 So., 810; *Kotes* v. *State,* 55 Neb., 691, 76 N. W., 467; *Thomas* v. *Commonwealth,* 90 Va., 92, 17 S. E., 788.

■ It is insisted for the complainant Hanover that McLain's death did not occur "more than thirty days" prior to the next biennial election. As stated before, McLain died July 4. The next biennial election recurred on August 4 following.

The argument for complainant is that the law does not take into account fractions of a day and that more than thirty days did not elapse between July 4 and August 4. This argument ignores the settled rule in Tennessee with respect to the computation of time.

Section 11 of the Code provides "The time within which any act provided by law is to be done, shall be computed by excluding the first day and including the last, unless the last day is Sunday, and then it also shall be excluded."

This section of the Code has been considered in two rather late cases—*Allen* v. *Reed,* 147 Tenn., 612, 250 S. W., 546, and *Allen* v. *Effler,* 144 Tenn., 685, 235 S. W.,

67. In the former case, the statutory rule was held applicable for the determination of the time after which a thing might be done. Such method of computation of time has the sanction of very high authority noted in our cases just cited.

Applying the rule, the period of thirty days from July 4 expired on August 3. It was thirty-one days from July 4 to August 4. Since thirty-one days is more than thirty days, the general election, recurring on August 4, was a general election recurring more than thirty days after McLain's death. If August 3 was the last day of the thirty-day period, August 4 was beyond that period.

Such method of counting time is of invariable use in this jurisdiction. The time after judgment for the issuance of an execution, the time after judgment in which an appeal is to be prayed, the time after judgment of the Court of Appeals in which petition for *certiorari* may be filed, the time after judgment in which a petition to rehear may be filed, the time after motion for new trial overruled in which a bill of exceptions may be filed—all these periods are so calculated.

The complainant then insists that if there was a period of more than thirty days between McLain's death and the next biennial election that the special election held on August 4, 1938, to fill the vacancy was illegal and void, and that defendant Boyd, successful in that election, acquired no title to the office in question.

The relevant constitutional and statutory provisions are as follows:

Article 6, section 5, of the Constitution is in part this: "An Attorney for the State for any circuit or district for which a Judge having criminal jurisdiction shall be provided by law, shall be elected by the qualified voters

of such circuit or district, and shall hold his office for a term of eight years, and shall have been a resident of the State five years, and of the circuit or district, one year."

Article 7, section 5, of the Constitution is in these words: "Elections for judicial and other civil officers, shall be held on the first Thursday in August, one thousand eight hundred and seventy, and forever thereafter on the first Thursday in August next preceding the expiration of their respective terms of service. The term of each officer so elected shall be computed from the first day of September next succeeding his election. The term of office of the Governor and other executive officers, shall be computed from the 15th of January next after the election of the Governor. No appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term. Every officer shall hold his office until his successor is elected or appointed and qualified. No special election shall be held to fill a vacancy in the office of Judge or District Attorney, but at the time herein fixed for the biennial election of civil officers. And such vacancy shall be filled at the next biennial election recurring more than thirty days after the vacancy occurs."

Provisions of the Code are these:

"644 394 (318). Vacancy, how filled.—A vancancy in the office of such officer shall be filled by the voters of the district at the next biennial election more than thirty days after the happening of the vacancy. The election shall be ordered by the governor by issuing proper writs of election to the commissioners of elections throughout the district, notice being given for one month by publication in one or more newspapers in the district. (1853-54, ch. 32, secs. 6, 7; 1907, ch. 436; 1909, chs. 104 and 273.)

"645 395 (319). Temporary Appointment.—In the meantime, the governor shall appoint a suitable person to fill the office temporarily until the election takes place. (Ib.)"

In addition to the quoted provisions of the Code, in chapter 2, sections 1911 *et seq.,* complete machinery is set up for the holding of all elections by the people. These sections of the Code contain detailed requirements as to the conduct of elections, the duties of officers of election, qualification of voters, counting of ballots, and other provisions designed to secure a fair expression and return of the popular will. Among other things, section 1985 of the Code provides that the commissioners of election for each county shall publish notices of all elections for fifteen days previously thereto.

There has been much argument at the bar and in the briefs as to how far that provision of Article 7, section 5, of the Constitution "And such vacancy shall be filled at the next biennial election recurring more than thirty days after the vacancy occurs"—as to how far such provision is self-executing. We do not find it necessary to decide this question in the case before us. The quoted provision of the Constitution is substantially repeated, in terms equally mandatory in Code, section 644, as above appears. The validity of this election, therefore, whether or not it shall be set aside, may be determined by a consideration of statutory provisions alone. Such statutory provisions repeat and supplement the constitutional provision. There is no conflict.

It is in effect urged by complainant that the language of Code, section 644, directing that the election shall be ordered by the Governor by writs of election to the commissioners throughout the district and that no-

tice shall be given for one month by publication constitutes a condition, or conditions, precedent to the calling and holding of a valid special election. This, although such special election is held at the time of the general election and although such special election is advertised to the fullest extent, and there is the fullest participation of voters therein. To this we cannot agree.

It is conceded that except as to the order of the Governor and publication at his behest, this election was advertised and held in strict compliance with all the provisions of section 644 of the Code and the many other sections of the Code referred to regulating the advertisement and manner of holding lawful elections.

The order of this election by the Governor to fill this vacancy and the publication of the election by the Governor were unimportant details of the prescribed procedure. The Governor could not now, as formerly, have fixed the date of the election. That date was fixed by law. Ample advance publication of the election was otherwise provided as heretofore seen.

That there was a vacancy in the office of District Attorney-General for the Fifteenth Judicial Circuit was a matter of common knowledge. That Mr. McLain died on July 4, 1938, was known to the Governor. That a period of more than thirty days would intervene between July 4 and the next biennial election, we have shown. The Governor no doubt would have proceeded to order the special election for August 4 following had he been properly advised.

It is suggested that the ascertainment of the existence of a vacancy in the office of a District Attorney-General involves an exercise of discretion on the part of the Governor and a determination by that official of the

time the vacancy occurred. This might be true if the office had been vacated in some other manner in which it could be vacated under section 1859 of the Code. An investigation and an exercise of judgment might, for instance, be necessary to determine if an official had ceased to be a resident of the State. When, however, a vacancy is caused by death and the fact of the death and the time of the death of the officer are known and conceded, there is no place for the exercise of the discretion of the Governor. His duty is provided by the law.

In the case of *James E. Stark et al.* v. *Thomas C. Ashcroft et al.* Jackson, 1916 (opinion not for publication), this court expressed the view that where the great body of electors have had actual notice of the time and place of holding an election—a special election—and voters have participated in such an election to the usual extent, a substantial compliance with the statutory formalities as to notice was sufficient. In that case we upheld the validity of a special election on a bond issue, held at the same time of a general municipal election, when the statute authorizing the vote on the bond issue prescribed ten days' publication of the special election and, as a matter of fact, only nine days advance publication had been made.

In *Stark* v. *Ashcroft* the court reviewed some of our previous decisions and made particular reference to *Heiskell* v. *Lowe,* 126 Tenn., 475, 153 S. W., 284, wherein we said [page 497] : "It is a serious thing for any court to interfere with the result of an election, and set aside what appears to be the expression of the popular will. No court will do so on slight ground."

In 20 Corpus Juris, 980, the editor notes that there is a conflict of authority as to whether an election to fill

a vacancy is vitiated for want of notice, where the law directs that it shall be held at the next general election after the vacancy has occurred. It is said, however, ''The better opinion seems to be that an election to fill a vacancy, which has been actually and fairly held at the time and place fixed by law will not be vitiated for want of notice.''

In accord with the statement quoted we find Mechem on Public Officers, section 174; Throop on Public Officers, sections 150 et seq.; McCrary on Elections, Fourth Edition, section 178; 9 R. C. L., pp. 992, 995. The texts referred to are supported by decisions too numerous to be reviewed. We may note two of these.

The Constitution of New York, 1846, article 6, section 13, provided that ''In case the office of any judge of the Court of Appeals, or justice of the Supreme Court, shall become vacant before the expiration of the regular term for which he was elected, the vacancy may be filled by appointment by the Governor, until it shall be supplied at the next general election of judges, when it shall be filled by election for the residue of the unexpired term.'' A statute of New York provided for a designated public notice of elections to be given by the Secretary of State. One of the Supreme Judges died on October 23. The next general election of judges occurred on November 6. There was not time intervening for the Secretary of State to give the required notice. However, an election was held to fill the vacancy, in which a full vote was cast, and the successful candidate in that election was held entitled to the office. *People* v. *Cowles,* 13 N. Y., 350. Referring to this decision, the New York Court of Appeals in a later case said of the earlier case: ''There an authority stood behind the election and commanded it, and no less

an authority than the Constitution itself. And there, too, the existence of the vacancy was publicly known, conventions made their nominations, and fifty thousand votes were cast. There was no trace of artifice or fraud, and no defect except the formal one of no notice by the secretary of State, which, in that instance, it was impossible to give according to law." *People ex rel. Woods* v. *Crissey,* 91 N. Y., 616, 635.

The Constitution of Montana provided in the event of a vacancy in the office of district judge, such vacancy should be filled by appointment of the Governor until the next general election, and that the person chosen at the next general election should fill the vacancy until the expiration of the term. Statutes of that State made it incumbent upon the Governor to include in an election proclamation specific mention of the fact that in a particular judicial district a vacancy existed in the office of judge. The Governor failed to include such notice in his proclamation of election but an election to fill the vacancy was nevertheless held and the right of the successful candidate to the office was contested. The court said the case "involved the fundamental right of the people to be served by a person chosen by themselves in preference to one put into the office by the appointing power to meet a temporary emergency. The underlying principle is that, inasmuch as the people have the right to choose officers to serve them, no informality in the election will suffice to defeat their will, as expressed by their votes, if in fact it appears that they had actual notice and did indicate their choice. This rule is especially applicable to cases in which the Constitution and statutes enacted in pursuance thereof require the election to be held on the date of the general election." *State ex rel. Patterson* v. *Lentz,* 50 Mont., 322, 345, 146 P., 932, 938.

The official returns show that the vote cast in this election for District Attorney-General on August 4, 1938, was higher than the vote cast for candidates for any other office on the same day except for candidates running for sheriff. As it heretofore appears, more than forty-four thousand votes were cast in this special election and there can be no question but that the people had adequate notice of the election and that there was a full expression therein by the people.

■ For the reasons stated, under the authorities set out, we are unwilling to set aside this election because of the failure of the Governor to issue a writ of election and to cause one month's publication thereof to be made. The time and place of the election were fixed by a higher authority. The vacancy was a matter of public knowledge. The election machinery was set up. It can make little difference who started the machinery so long as it functioned properly on a proper occasion. We must regard the inaction of the Governor in this particular case as merely an immaterial official oversight.

The facts in *Barry* v. *Lauck*, 45 Tenn. (5 Cold.), 588, are so entirely different from those here appearing that the decision manifestly is no authority against the conclusions we have reached. Other decisions of this court relied on by the complainant in this connection, we do not regard as important in our view of the case.

There has been considerable discussion with reference to the case of *Marion S. Boyd* v. *T. Galen Tate et al*. This was the suit in which a mandatory injunction was issued requiring the commissioners of election to advertise and hold this special election. The case of *Boyd* v. *Tate* is not before this court and could now scarcely be considered, brought up in any form, since apparently

it is moot. We have no occasion to pass on the propriety of the issuance of the mandatory injunction therein.

Upon the authorities heretofore discussed, the validity of the special election would have been sustained had the election commissioners advertised and held it on their own responsibility. It seems to make no difference that the commissioners held this election under constraint of the court.

The decree of the court below will be modified insofar as it was adjudged this suit could not be maintained as an election contest. We regard it as an election contest, but as such we must dismiss the bill for the reasons stated.