GUY A. HAMILTON, COUNTY JUDGE OF FILLMORE COUNTY, NEBRASKA, APPELLEE, V. WILLARD H. FOSTER, COUNTY CLERK OF FILLMORE COUNTY, NEBRASKA, ET AL., APPELLANTS.

50 N. W. 2d 542

Filed December 21, 1951.    No. 33089.

*John C. Gewacke,* for appellants.

*Guy A. Hamilton,* pro se.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Guy A. Hamilton, as the elected, qualified, and acting county judge of Fillmore County, brought this action in the district court for Fillmore County against the county of Fillmore seeking a declaratory judgment to determine his rights as to salary during his present term of office, particularly since January 1, 1951. The trial court found that when plaintiff took office on January

6, 1949, Fillmore County was classified under section 23-1101, R. S. 1943, as amended by Laws 1947, c. 62, § 4, p. 199, as class (4) for the purpose of fixing the salaries of its county officers; that section 23-1105, R. S. 1943, as amended by Laws 1947, c. 70, § 4, p. 224, then in effect, provided a county judge in a class (4) county should be paid an annual salary of $2,900; that since January 6, 1949, and during plaintiff's present term of office, the population of the county had decreased so as to make it a class (3) county for the purpose of fixing the salaries of county officers; that such change in population did not, because of the provisions of the Nebraska Constitution, affect plaintiff's salary; and that plaintiff is entitled to be paid a salary of $2,900 during all of his present term of office. The court, in view thereof, awarded judgment against the county accordingly. Defendant filed a motion for new trial and, from the overruling thereof, has appealed.

The facts are stipulated and not in dispute. Appellee was elected county judge of Fillmore County for a term of four years at the general election held on November 2, 1948. He qualified for the office and has been acting in that capacity since his present term began on January 6, 1949.

Prior to November 2, 1948, the board of supervisors of Fillmore County had, by resolution adopted July 28, 1948, determined the population of the county to be more than 13,000 or class (4) for the purpose of fixing county officers' salaries under section 23-1101, R. S. 1943, as amended by Laws 1947, c. 62, § 4, p. 199. Under this classification the holder of the office of county judge was entitled to receive an annual salary of $2,900 and appellee was paid that salary for the years of 1949 and 1950. See section 23-1105, R. S. 1943, as amended by Laws 1947, c. 70, § 4, p. 224.

On December 21, 1950, the board of supervisors passed a resolution for the purpose of fixing the salaries of county officers wherein it fixed the population of Fillmore

County at 11,693 or class (3) under section 23-1101, R. S. 1943, as amended by Laws 1947, c. 62, § 4, p. 199. After January 1, 1951, pursuant to this resolution, the county commenced to pay plaintiff $2,100 per annum as provided for by section 23-1104, R. S. 1943, as amended by Laws 1947, c. 70, § 3, p. 223, the salary of a county judge in a class (3) county.

The salary changes effected by the 1949 Legislature (Laws 1949, c. 40, p. 134) and effective August 27, 1949, are not here applicable. Appellee's rights are controlled by the laws in effect at the time he was elected, qualified, and took over the duties of his office. These are sections 23-1101, R. S. 1943, as amended by Laws 1947, c. 62, § 4, p. 199, and 23-1104 and 23-1105, R. S. 1943, as amended by Laws 1947, c. 70, §§ 3 and 4, pp. 223-4. Ramsey v. County of Gage, 153 Neb. 24, 43 N. W. 2d 593. See, County of Yuma v. Sturges, 15 Ariz. 538, 140 P. 504; State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S. W. 466; State ex rel. Harvey v. Linville, 318 Mo. 698, 300 S. W. 1066.

Therefore the singular question presented by the appeal is, what was the effect, if any, of the reclassification of Fillmore County on December 21, 1950, upon the salary of the county judge during the balance of the term of office he was then serving?

The Constitution provides for the office of county judge and fixes his term of office at four years and provides his "salary shall be fixed by law." Article V, section 15, of the Constitution of Nebraska.

The statute in effect at the time appellee was elected and took office fixed his salary at the sum of $2,900 per annum. Section 23-1105, R. S. 1943, as amended by Laws 1947, c. 70, § 4, p. 224.

Article III, of the Constitution of Nebraska relating to legislative power provides by section 19 thereof, as amended in 1920, that: "The Legislature shall never grant any extra compensation to any public officer, agent or servant after the services have been rendered

nor to any contractor after the contract has been entered into, *nor shall the compensation of any public officer,* including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof *be increased or diminished during his term of office."* (Italics ours.)

We said of this section in Ramsey v. County of Gage, *supra*: "It was designed to protect the individual officer against legislative oppression and, further, to curb the activities of public officers in lobbying to induce the Legislature to increase salaries. By the amendment the people simply said that the Legislature shall not increase or diminish the compensation of any public officer during his term of office, and that this inhibition should include any, and therefore all, public officers whose compensation is fixed by the Legislature." See, also, State ex rel. Randall v. Hall, 125 Neb. 236, 249 N. W. 756.

It is appellants' thought that since the classification statute for the purpose of fixing county officers' salaries, being section 23-1101, R. S. 1943, as amended by Laws 1947, c. 62, § 4, p. 199, was in force and effect when appellee was elected and took office that it does not come within the inhibitions of Article III, section 19, of the Constitution of Nebraska, as amended in 1920, and that when the board of supervisors passed the resolution of December 21, 1950, a salary change came into effect by operation of law and that appellee took his office subject thereto. This precise question has apparently never been answered by this court. It was raised in Shambaugh v. Buffalo County, 133 Neb. 46, 274 N. W. 207, and Shambaugh v. Buffalo County, 137 Neb. 434, 289 N. W. 873, but, for reasons therein stated, it was not necessary to determine it.

An annotation of this subject will be found in 139 A. L. R. 737. Therein, at page 742, referring to a "Statute enacted before officer's appointment or election, automatically increasing or decreasing salary upon

change in population or assessed valuation during term," it states: "In a majority of jurisdictions in which the question has been considered, it is held that such an increase or decrease brought about solely because of a change in the population or assessed valuation does not violate the constitutional inhibition."

Basically, "In the absence of any constitutional prohibition, or affirmative provision, fixing the term of office of any officer or his compensation, the legislature may change such term or compensation, and such change of term or compensation will apply as well to the officers then in office as to those to be thereafter elected." County of Douglas v. Timme, 32 Neb. 272, 49 N. W. 266. See, also, County of Yuma v. Sturges, *supra.*

Of the cases examined, which includes all those cited by the parties, we find the courts follow the majority rule when the constitutional provision involved is like our own.

In County of Yuma v. Sturges, *supra,* under a constitutional inhibition upon the Legislature like ours, it was said:

"It is at once seen that the constitutional restriction is an abridgment of the law-making power to either increase or diminish that compensation of the officer during his term, and which was prescribed for and as an incident to the office at the beginning of his term; that during his term of office the public officer enjoys exemption from legislative interference and control over the amount of his compensation, and at the same time has a curb put upon his activity in the direction of an increase of compensation, whether such activity be worthy or pernicious. In fine he may devote his attention to the performance of his official duties, unembarrassed by any feeling that his worth is being niggardly rewarded in money, and the offspring of such a feeling which usually moves in the direction of increased compensation. At the same time there is the counterpart which attends him with a security from the wretched

thought that others may become imbued with the conviction that his stipend is much too large for one of his capacity, and thus move with the pruning-hook by way of economy in the public funds, or that desire which might in time find congenial soil in the breast of a people desiring to get rid of an officer altogether, and to that end take away that compensation which he hath.

"The matter of paramount importance here, then, is to ascertain what compensation was fixed or prescribed by law when the term of office of the appellee commenced."

The court then found: "When his term of office began, his compensation was definitely fixed and prescribed according as the assessed valuation of the county may be ascertained, if less than $9,000,000 a certain sum, and if $9,000,000 and over a certain sum; the fluctuation not being occasioned by any subsequent legislative action, but by operation of the very law in force and effect and controlling the compensation of the office at the beginning of appellee's term of office—by the operation of that law automatically."

It held: "Under the classification in force when appellee went into office, Yuma county was a county of the first class, with an assessed valuation less than $9,-000,000; his compensation was therefore fixed at $2,200 per annum. In August, 1913, Yuma county, while still remaining a county of the first class, nevertheless its equalized assessed valuation became more than $9,000,-000, and appellee's compensation was therefore fixed at $2,500 per annum. Not by virtue of any subsequent legislative action, but solely by the automatic operation of the very law in effect at the beginning of the term, and which law definitely prescribed and fixed the compensation incident to the office, the amount thereof being graded according to the determination of an extraneous fact, to wit, the fact of the equalized assessed valuation. * * * The constitutional inhibition has no application here, and the judgment of the lower court

awarding appellee compensation for the month of September, 1913, in the sum of $208.33, being at the rate of $2,500 per annum, is correct."

In State ex rel. Mack v. Guckenberger, 139 Ohio St. 273, 39 N. E. 2d 840, 139 A. L. R. 728, under a constitutional provision like ours, the court stated the question involved as follows: "The question presented by the respondent's demurrer is whether a statute, effective before the commencement of the term of a common pleas judge, whereby his compensation is automatically increased during the term by reason of the increase of the population of his county as shown by a federal census effective after the beginning of the term, is in conflict with Section 14, Article IV of the Constitution, * * *." It then states: "The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last federal census becoming effective during his term." And holds: "The inhibition, according to the language of the Constitution thus directed to the Legislature, is that it shall not by legislative act during his term diminish or increase the compensation of any common pleas judge. Such compensation must be fixed before his term begins, but there is no inhibition against the Legislature fixing such compensation before the term begins on a basis which may vary it in amount as time advances, provided that basis, within the contemplation and understanding of both the

judge and the people who elect him, is fixed, certain and unchangeable during his term. Such action upon the part of the Legislature does not thereby sanction or attempt to legalize an evil or vice which the Constitution prohibits."

Other cases discussing the question and arriving at the same conclusion are Puterbaugh v. Wadham, 162 Cal. 611, 123 P. 804; State v. Hamilton, *supra;* State v. Linville, *supra;* Board of Commissioners v. Crowe, 214 Ind. 437, 14 N. E. 2d 907, on rehearing 214 Ind. 441, 15 N. E. 2d 1016; State ex rel. Jaumotte v. Zimmerman, 105 Mont. 464, 73 P. 2d 548.

We have held:

"* * * the question in respect of the population of the state, or of the population of any of its subdivisions, is purely a question of fact to be determined by the court the same as other fact questions." Gordon v. Lowry, 116 Neb. 359, 217 N. W. 610.

"What the number of inhabitants may be is a question of fact which must be determined by some competent authority. The duty of settling with county officers, auditing their accounts, fixing the salaries of their deputies, as well as the general management of the affairs of the county, rests upon the county board. Before they can perform the duties devolved upon them by law, it becomes necessary that some determination should be made of the number of inhabitants of the county in order to classify the officers. * * * And where the board of county commissioners in good faith ascertain and determine the number of inhabitants of a county for the purpose of classification of the county officers, such determination is not subject to collateral attack, but is conclusive as to those to whom it applies until set aside or vacated by such county board or some other forum of competent jurisdiction in a direct proceeding instituted for that purpose." Buffalo County v. Bowker, 111 Neb. 762, 197 N. W. 620.

"The salary of the county attorney for any year de-

pends upon the number of inhabitants of the county during that year, and that fact is to be determined, as are other facts in litigation, by the best competent evidence that can be adduced under the circumstances." O'Connell v. Sioux County, 94 Neb. 826, 144 N. W. 779.

"By the provisions of the foregoing statute, the plaintiff was entitled to receive an annual salary, the amount of which depended upon the population of defendant county during each year that plaintiff served as county treasurer." Shambaugh v. Buffalo County, 137 Neb. 434, 289 N. W. 873. See, also, Shambaugh v. Buffalo County, 133 Neb. 46, 274 N. W. 207.

We are of the opinion that when a statute enacted and in effect prior to the election of a public officer fixes the compensation of such officer upon the basis of population and an increase or decrease in compensation occurs during the officer's term because of a change in population after his election, such increase or decrease in compensation does not violate our constitutional provision that the compensation of a public officer shall not be increased or diminished during his term. It is a factual and not a legislative change.

When appellee was elected to, qualified for, and took over the duties of the office of county judge, section 23-1101, R. S. 1943, as amended by Laws 1947, c. 62, § 4, p. 199, provided for the classification of counties by population for the purpose of fixing the salaries of county officers. The law in effect at that time fixing the salaries of county officers according to their classification was Chapter 70, Laws 1947, p. 221. Since Fillmore County was at that time a class (4) county the salary of the county judge was fixed by section 4 of Chapter 70, Laws 1947, p. 224, at the sum of $2,900 per annum. Appellee was properly paid this salary for the years of 1949 and 1950. However, on December 21, 1950, the board of supervisors determined the population to be 11,693. The validity of this determination is not questioned. This resulted in Fillmore County becoming a class (3) county

for the purpose of fixing the salaries of its county officers. Consequently, under section 3 of Chapter 70, Laws 1947, p. 223, the salary of the appellee for the remainder of his term, or for the years 1951 and 1952, became $2,100 per annum.

In view of the foregoing we find the judgment of the trial court to be in error and it is reversed and the cause remanded with directions that it enter a judgment in accordance herewith, that is that appellee for the balance of his term, or for the years of 1951 and 1952, is entitled to a salary of $2,100 per annum.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., dissenting.

The majority opinion in this case finds support in decisions from some jurisdictions. In other jurisdictions an opposite viewpoint has been expressed. It is but fair to say that in the jurisdictions wherein the question has been considered the majority hold to the view expressed in the majority opinion herein.

With that view I cannot agree and in consequence I respectfully dissent.

Article III, section 19, of the Constitution of Nebraska to the extent that it is important here is the following: "The Legislature shall never grant any extra compensation to any public officer, agent or servant after the services have been rendered nor to any contractor after the contract has been entered into, nor shall the compensation of any public officer * * * be increased or diminished during his term of office."

In the words employed in this provision, taken either in or out of context or in relation to any other constitutional provision, I fail to find any confusion or ambiguity. The language to me is simple, plain, and clear and thus, under rules so well known that citation of authority therefor would be superfluous, it is entitled to be accorded its common and ordinary meaning. It says, and I cannot escape the belief that it means, that the com-

*pensation of no public officer shall be increased or diminished during his term of office.*

As I interpret, this county judge was entitled to receive without increase or decrease the salary which was appropriate under law at the commencement of his term of office.