## KING, *Appellant*, v. TEXAS COUNTY.

### Division One, November 15, 1898.

County Clerks : AMOUNT OF SALARY: POPULATION OF COUNTIES. In determining what was the salary of a county clerk for the year 1896, the county court is required to multiply by five the vote cast at the presidential election of 1892, in order to ascertain the population of the county. And although the clerk did not present his annual statement till February, 1897, it was the duty of the court to determine his salary by the vote cast at the presidential election of 1892, and not by that cast at the election of 1896.

*Appeal from Texas Circuit Court.* — HON. L. B. WOODSIDE, Judge.

AFFIRMED.

*Young & Lyles* for appellant.

(1) The compensation of a county clerk is an annual compensation—not quarterly. *Allen v. Cowan*, 96 Mo. 193; *Lycett v. Wolff*, 45 Mo. App. 489. For the year 1896 it was measured by the year from January 1, 1896, to January 1, 1897. If within that time it was proven in a legal way that the population of the county had increased from less than twenty thousand to twenty-two thousand, then the county was immediately transferred to a higher class. The election was the means provided by law for ascertaining the population of the county for the year 1896. The salary was fixed by law and no action of the county court had in May, 1896, could prevent the law operating. (2) By such presidential election the population of Texas county

was to be ascertained—not for the succeeding year, but for that year, 1896, in its entirety.   *Lycett v. Wolff*, 45 Mo. App. 589.  (3) The provisions of section 31, Session Acts 1891, page 153, classifying the counties by population and allowing increased compensation to a clerk for a greater population is not violative of the provisions of section 8, article XIV of the Constitution of Missouri.  The latter provision being directed against special legislation increasing salaries and the terms of officers.   *State ex rel. v. Ransom*, 73 Mo. 78; *State ex rel. v. McGovney*, 92 Mo. 428; *Allen v. Cowan*, 96 Mo. 195; sec. 12, art. IX, Constitution; Sess. Acts 1891, sec. 31, p. 153.

*Edward C. Crow*, Attorney-General, for respondent.

It is a common provision in the Constitutions and statutes of the States that the salary or compensation of a public officer shall not be increased or diminished during his term of office.   The wording of our constitutional provision has been construed by the Supreme Court to mean just what it says. *State ex rel. v. Smith*, 87 Mo. 158; *State ex rel. v. McGovney*, 92 Mo. 428; *State ex rel. v. Ransom*, 73 Mo. 79; *Callaway Co. v. Henderson*, 119 Mo. 132; *Leister v. Wolfe*, 45 Mo. App. 489.   The wisdom of this constitutional provision is obvious and the courts will not permit it to be evaded. Meachem on Public Officers, sec. 858; *Garvey v. Hartford*, 54 Conn. 440; *Weeks v. Texarkana*, 50 Ark. 81; *State v. McDowell*, 19 Neb. 442; *Purcell v. Parks*, 82 Ill. 346.

ROBINSON, J.—The essential facts presented by the record in this case are as follows:

At the general election in November, 1894, the plaintiff was elected clerk of the county court of Texas

county for the term of four years, commencing January 1, 1895, and duly qualified as such. At the presidential election held in said county in November, 1892, the number of votes cast for President and other officers voted for thereat, was less than four thousand; but at the next succeeding presidential election in November, 1896, the total number of votes cast in such county was four thousand four hundred. The plaintiff duly presented and filed in the county court his quarterly statement and abstract of fees collected for the quarters ending March 31, June 30, September 30, and December 31, 1896. No determination, however, of the fees or salary of the plaintiff was made by the county court at the May, August or November terms of said court, but at the ensuing February term, 1897, the plaintiff presented to the county court, his annual settlement showing amounts collected and paid out by him for necessary deputy hire for the year commencing January 1, 1896, and ending December 31, 1896, showing the total amount collected during such period to be $2,224.83; total amount paid for deputy hire $900; amount retained by plaintiff and applied on his salary, $1,324.83. After examining said statement, the county court held that the plaintiff was only entitled to retain $1,250, on account of his salary, leaving the balance of $74.83 in his hands; which amount the county court ordered the plaintiff to pay into the county treasury within fifteen days thereafter. Thereupon the plaintiff appealed to the circuit court of Texas county.

In that court, a jury having been waived, the case was submitted to the court for trial which again resulted in a judgment against the plaintiff for $74.83, being the amount in his hands, in excess of $1,250. After an ineffectual motion for a new trial, plaintiff brings the case here by appeal. Appellant contends that by reason of the increased vote at the presidential

election in November, 1896, he was entitled under the provisions of the Acts of 1891, to an increase of his salary for the year 1896 from $1,250 to $1,600 on the theory that the total number of votes of Texas county cast at the presidential election in 1896, multiplied by five, would show that the population of Texas county for that year was more than twenty thousand and less than twenty-five thousand. Whereas the vote in such county at the presidential election in November, 1892, when ascertained by this method, would show that the population was more than fifteen thousand, and less than twenty thousand, making a difference of $350 in the amount of the plaintiff's salary.

At the trial, the circuit court, of its own motion, gave the following declaration of law:

*First:* "The court declares the law to be that it was intended by section 8 of article XIV of the Constitution of the State of Missouri, to prevent the passage of laws to increase the salary and fees of officers, and that it was intended by section 12 of article IX, that the legislature, by a law uniform in its operations, might classify the counties in the State by the population and regulate the fees and salaries of the county officers by classes, and that when any county passes from one class to another, the fees and salaries of the officers in said county, would be changed by the change of the class of said county and such change would take effect regardless of the time of the expiration of office of any such officer, and such increase of fees and salaries would not be in contravention of said section 8, article XIV of the Constitution." No fault is found by the plaintiff with this instruction. The court further instructed:

*Second:* "That section 30, page 152, Acts of 1891, requires clerks of courts to make quarterly returns to the county court of all fees received by them during

such quarter, and at each regular session of the county court it is the duty of the court to examine said statements and to allow all necessary deputy hire, not exceeding the amount allowed by section 31, and to determine whether said clerk had received the full amount of the salary allowed him by section 31; and if he has received more than the salary allowed him by law, to order him to pay the excess into the county treasury.

"It was the duty of the county court of Texas county, Missouri, at the May term, 1896, to examine the quarterly statement for the quarter ending March 31, 1896 (January, February and March), made by the plaintiff, J. S. King, clerk of the county court and to determine whether he had during such quarter received the full amount of his salary for the year; and in order to do this the court was required, at said May term, 1896, to determine the salary of said King for the year of 1896. Under the provision of section 31, the amount of the salary of the county clerk is based upon the population of the county, and for the purpose of fixing the salary of said clerk, the population of the county must be determined by multiplying by five the total number of votes cast in such county at the last presidential election prior to the time of such determination, and therefore the salary of said clerk for 1896 was based upon the vote cast at the presidential election for the year 1892, and could not exceed the sum of $1,250, and $900 for his assistants."

To this the plaintiff excepted. This exception presents the only question for our determination, and it must be determined by sections 30 and 31 of the Acts of 1891, p. 152, in relation to the fees and emoluments of county clerks and certain other officers, the law in force at the time the plaintiff was required to make his first quarterly return to the county court of fees, costs, etc.

Section 30 provides: "Every clerk of a court of record in every county in this State shall make return quarterly to the county court of all fees received to date of return, from whom received and for what services, giving the amount of each fee received, and of the salaries by him actually paid to his deputies or assistants, stating the same in detail and verifying the same by his affidavit. Such statement shall include all fees for all services of whatever character done in his official capacity, giving the name of each deputy or assistant, the length of time each was employed, and the amount of money paid to each. The county court shall at each regular session examine *such statement*, and may examine any person as to the truth of the same, *and allow all necessary clerk* or deputy hire, not exceeding the amount allowed in the next succeeding section of this chapter for deputies or assistants, and deduct the same from the aggregate amount received by the clerk, and if there be an amount still in the hands of the clerk exceeding the sums specified in the next section succeeding, the court shall ascertain the amount of such excess over and above the amounts allowed to be retained by the clerk and paid to deputies and assistants, and make an order directing such clerk to pay the amount so ascertained into the county treasury. * * * * * "

Section 31 is as follows: "The aggregate amount of fees that any clerk under this chapter shall be allowed to retain for any one year's services shall not in any case exceed the amount hereinafter set out. In all counties having a population of one hundred thousand persons or over, and less than three hundred thousand, the clerks shall be allowed to retain three thousand dollars for themselves, and shall be allowed to pay for deputies and assistants not exceeding sixteen

thousand dollars, in such of said counties where courts are held at more than one place, and in all other such counties they shall be allowed to pay for deputies and assistants not exceeding five thousand dollars. In all counties having a population of forty thousand persons and less than one hundred thousand persons, the clerks shall be permitted to retain two thousand dollars for themselves, and be allowed to pay for deputies or assistants three thousand five hundred dollars. In all counties having a population of thirty thousand persons and less than forty thousand, the clerks shall be permitted to retain two thousand dollars for themselves and be allowed to pay for deputies or assistants not exceeding seventeen hundred and fifty dollars; and in all counties having a population of twenty-five thousand and less than thirty thousand persons, the clerks shall be permitted to retain eighteen hundred dollars for themselves, and be allowed to pay for deputies or assistants not exceeding fifteen hundred dollars. In all counties having a population of twenty thousand and less than twenty-five thousand persons, the clerks shall be permitted to retain *sixteen hundred dollars* for themselves and be allowed to pay for deputies or assistants not exceeding *twelve hundred dollars*. In all counties having a population of fifteen thousand and less than twenty thousand persons, the clerks shall be permitted to retain *twelve hundred and fifty dollars* for themselves and be allowed to pay for deputies or assistants not exceeding nine hundred dollars. In all counties having a population of ten thousand and less than fifteen thousand persons, the clerks shall be permitted to retain eleven hundred dollars for themselves and be allowed to pay for deputies or assistants not exceeding seven hundred dollars. In all counties having a population of seven thousand and not less than ten thousand persons, the clerks shall be allowed to retain eleven

hundred dollars for themselves, and be allowed to pay
for deputies or assistants not exceeding six hundred
dollars. In all counties having a population of less
than seven thousand persons, the clerks shall be [per-
mitted to retain all fees earned by them for themselves
and deputies. For the purpose of this chapter the
population of any county shall be determined by mul-
tiplying by five the total number of votes cast in such
county, at the last presidential election prior to the
time of such determination."

As seen by section 30, it is made the duty of the
county court at each regular session to examine such
quarterly statements, made by the clerk and allow all
necessary clerk and deputy hire not exceeding, how-
ever, the amount allowed by section 31. The latter
section, it will be observed, classifies the counties ac-
cording to the population, fixing the amount that the
clerks in each class should be permitted to retain for
their compensation and the amount allowed to be paid
for deputies and assistants. For the purpose of this
appeal, it will be presumed that the county court of
said county duly determined the population of Texas
county after the presidential election of 1892 by mul-
tiplying the votes cast in said county at such election
by five as required by the acts of 1891, and determined
the salary of the plaintiff accordingly. Plaintiff hav-
ing been elected in 1894, it will be seen that there was
no presidential election whereby his compensation
could possibly be affected until the next succeeding
presidential election which did not occur until Novem-
ber, 1896. It seems to us a proposition as clear as it
is reasonable, that the acts of 1891, above referred to,
operated to fix the compensation which the plaintiff
might receive out of the fees of his office, and the
amount of such fees which he might apply to the pay-
ment of deputy hire and that his salary for the year

1896 must accordingly be determined by the number of votes cast in Texas county at the presidential election of 1892, by multiplying by five the total number of votes cast in such county at the last presidential election prior to 1896, and that the failure of the county court of Texas county to determine at its May and September terms of that year, during the plaintiff's incumbency, his salary, did not in any manner affect the amount of the clerk's compensation after the vote of the presidential election of 1892 had fixed and determined his salary. But little need be said to vindicate the correctness of the court's second instruction against the insistence of the plaintiff, that as the presidential election of 1896 took place before the last two quarterly statements of the year, 1896, it was the duty of such court at its February term, 1897, in fixing plaintiff's salary for the year 1896, to adjust same on the basis of the vote of 1896 regardless of the vote cast at the presidential election in 1892. It suffices to say that his salary was fixed by and on the basis of the vote cast at the presidential election in 1892 being the last presidential election prior to his induction into office, otherwise there would be no rule fixing the annual compensation of county clerks. If the presidential vote of 1892 was not to be resorted to for the purpose of determining the amount of plaintiff's salary for the year 1896, and the amount to be allowed for that year as expenses for his deputy hire and assistants, the county court at its May and September terms before the presidential election in November (of that year) would be without data to determine whether the clerk was retaining more of the income of his office than he was entitled to, and as a consequence could make no calculation or order as to any excess over salary and deputy hire that he might have in his hands as required by section 30. While the compensation of

the county clerk is an annual compensation, not quarterly, as contended by appellant, the clerk is required to make his quarterly return to the county court of all fees received to date of return, together with a statement of all salaries by him actually paid to his deputies and assistants, and the court is then required, if there is ascertained to be an amount in the clerk's hands in excess of his salary and the amount allowed to be expended for deputy hire, to make its order directing such clerk to pay the excess so ascertained into the treasury of the county, and this could not be done if the amount of the clerk's salary was depending upon the unknown result of an election in November following, which might place Texas county in a class where the salary of its clerk would be greater or less than when plaintiff was inducted in office in 1894. The law contemplates no indefinite or undeterminable salary for county clerks during their incumbency in office, yet according to plaintiff's contention, from January 1, 1896, to November, plaintiffs, salary was an unknown quantity. The conclusion, therefore, which we have reached, is that the proposition contained in the second instruction complained of, is a correct declaration of law as applied to this record.

The Attorney-General in his brief on behalf of Texas county questions the correctness of the first instruction above referred to, because the acts of 1891, classifying counties by population and allowing increased compensation based on the population is violative of section 8, article XIV, of the Constitution of Missouri, which provides that "the compensation or fees of no state, county or municipal officer, shall be increased during his term of office." It is unnecessary to notice this objection, as no such question is presented by this record. If the decision below erred upon the question as to the constitutionality of the

acts of 1891, as claimed by the Attorney-General, that error does not affect the judgment in the county's favor. Moreover the defendant took no appeal and is not, by the record before us, here complaining of any ruling or decision of the circuit court. For the reasons indicated, the judgment of the circuit court must be affirmed. All concur.