THE STATE ex rel. LOGAN T. MOSS v. GEORGE B. HAMILTON et al., Judges of County Court of Crawford County.

In Banc, March 22, 1924.

1. **CIRCUIT CLERK: Elected in 1918: Salary for 1921 and 1922.** The Act of 1915 (Laws 1915, p. 378), by declaring that the population shall be determined by multiplying by five the total number of votes cast "at the last Presidential election" prior to such determination, did not fix for his full term of four years the salary of a clerk of the circuit court elected in 1918, but by said statute his salary was to be determined by the number of votes cast at the election of 1916 until another Presidential election was held, and after the Presidential election of 1920 was held his salary for the next two years was to be determined by the vote cast at that election. So that where the population of the county, by using the vote cast in 1916 as the basis of calculation, was between 15,000 and 20,000, and by using the vote cast in 1920 as the basis of calculation the population was between 20,000 and 25,000, his salary for the years 1919 and 1920 was $1600 per year, and for the years 1921 and 1922 was $1950 per year. The county, so far as the salary of a circuit clerk is concerned, is to be determined by using the vote cast at the nearest preceding Presidential elec-

State ex rel. Moss v. Hamilton.

tion as the basis for ascertaining the population, and if by that calculation, made in the midst of his term, the county drops to a lower class, or enters a higher class, his salary for the succeeding years of his term must be accordingly decreased or increased.

2. ———: **Increase in Salary During Term: Constitutional Inhibition.** The Act of 1915 fixed the salary of a clerk of the circuit court elected in 1918 by providing that, for each year of the four-year term, it should be determined by the population of the county, and that the population should be five times the vote cast at the nearest preceding Presidential election; and though by that rule of ascertaining the population the salary of the clerk in a certain county is found to be $1600 for the years 1919 and 1920, and $1950 for the years 1921 and 1922, there is no such increase in the offi-cer's compensation as violates Section 8 of Article 14 of the Constitution. The law made no increase, but remained fixed; it simply provided that the vote cast at the nearest preceding Presidential election should be taken as the basis for calculating the population, and by that rule the clerk's salary would be decreased for the balance of his term if the population dropped below a certain maximum number, and increased only in case it exceeded that number.

3. **SALARY: Mistake of Law: Public Funds: Public Officials.** A mistake of law will not excuse a public official for wrongfully paying out public funds to another public official, nor will it excuse a public official for retaining public funds due another public official. Where the clerk of the circuit court, in presenting his salary account to the county court, asked for a less sum than he was entitled to under the law, his ignorance of the law, or the fact that he was mistaken in his view of the meaning of the law, will not estop him from claiming the unpaid balance to which under the law he was entitled; nor will the fact that the county court accepted his view of the law and paid him what by his accounts he claimed was due him excuse the court from paying him the balance due him according to the then law.

4. ———: **Estoppel: Incomplete Discharge of Legal Obligation.** To constitute equitable estoppel the person invoking it must have been misled into such action that he will suffer injury if estoppel is declared. The fact that the clerk of the circuit court paid over monthly into the county treasury the fees collected by him, and that he presented to the county court monthly accounts for his salary at the rate of $1600 per year, which were regularly paid, where the statute fixed his salary at $1950, does not amount to estoppel in suit to compel the county court to pay him $350 more

for each year, for there was only a part payment of a debt.due him, and such acts did not cause the county or the county court to do anything to the detriment of either.

Headnotes 1 to 3: **Clerks of Courts:** 1, 11 C. J. sec. 46; 2, 11 C. J. sec. 62 (1926 Anno); 3, 11 C. J. sec. 46 (1926 Anno). Headnote 4: Estoppel, 21 C. J. sec. 206.

## *Mandamus.*

ALTERNATE WRIT MADE ABSOLUTE.

### *L. B. Woodside* for relator.

(1) The clear intention of the framers of the Constitution was to divide the counties by classes, and that each presidential election would be the basis for fixing the salary during the next four years regardless of who might be the incumbent of the office. King v. Texas County, 146 Mo. 69. (2) In respondents' brief they insist that by accepting a smaller sum than to which he would be entitled under the vote of 1920, it is a mistake of law on the part of relator and from which there can now be no relief. This rule does not apply in transactions between public officers. State ex rel. v. Scott, 270 Mo. 153; Lamar Twp. v. Lamar City, 261 Mo. 171; Bird v. Sellers, 122 Mo. 23. (3) There was no mistake of the law. They all knew what it was and had been operating under it and applying it for two years. The mistake was, as claimed by relator, a want of knowledge of the population, and respondents cannot now be heard to say relator by investigation could have ascertained the population. Kefferstein v. Holliday, 3 Mo. App. 570; Koontz v. Central National Bank, 51 Mo. 278; Marion County v. Phillips, 45 Mo. 75; State v. Roberts, 62 Mo. 388; Chrisman v. Linderman, 202 Mo. 605. (4) There was no settlement made at any time. The relator paid his money into the treasury as he was bound by law to do, and this certainly can't be charged against

him. The court failed to pay him his full salary, and while this may have been owing in some degree to the negligence of the relator in not making his full claim, yet this negligence should not defeat him from his just dues. William v. Carroll Co., 167 Mo. 9. (5) Both parties were bound by the same rule, and the transaction was such that if either could have claimed a correction of the mistake, the other could also. Lamar Twp. v. Lamar City, 261 Mo. 188; 30 Cyc. 1315; State ex rel. Barker v. Scott, 270 Mo. 146. (6) The increased compensation came about through legal process and was authorized by the law of the land. The relator never got his, and this claim against him that he didn't ask for it is in-equitable and unjust.

*Roy Clymer* for respondents.

(1) The relator should not recover in this action for the reason the Constitution expressly prohibits the increase in the salary of an officer during his term of office. Mo. Constitution, sec. 8, art. 14; State ex rel. v. Gordon, 254 Mo. 476; State ex rel. v. Smith, 87 Mo. 158; Folk v. St. Louis, 250 Mo. 116; State, infra, v. Ranson, 73 Mo. 78; State ex rel. v. Jost, 269 Mo. 248; Givins v. Davies County, 107 Mo. 603; 29 Cyc. 248. The consti-tutional provision prohibiting an increase in the salary of. an officer during his term of office has reference to the term fixed by law as a term; in this particular case, the term beginning on the first Monday in January, 1919, and ending December 31, 1922. State ex rel. v. Farmer, 271 Mo. 314; State ex rel. v. Smith, 87 Mo. 168; State ex rel. v. Gordon, 238 Mo. 168; Givins v. Davies County, 107 Mo. 603. (2) The salary of the clerk of the Circuit Court for the four-year term beginning on the first Monday in January, 1919, was determined by the vote cast at the Presidential election held in November, 1916, and when such salary was determined and fixed at the February term, 1919, it was determined and fixed for the entire term, and not for the first two years of

such term only. State ex rel. v. Farmer, 271 Mo. 314; King v. Texas County, 146 Mo. 60. The salary of the circuit clerk must be paid monthly. R. S. 1919, sec. 11021. (3) When relator filed his demand for his monthly salary and the amount claimed by him was allowed in full and warrant issued for the amount so claimed and allowed, and the same was accepted by the relator, he was estopped from asserting any claim for any additional sum as part salary; his demand for and acceptance of a less amount than the law stipulated he was entitled to, being a mistake of law upon the part of relator and not a mistake of fact. 29 Cyc. 1425; Corbin v. Adair County, 171 Mo. 385; Heathcock v. Crawford County, 200 Mo. 170; State ex rel. v. Shipman, 125 Mo. 436; State ex rel. v. Ewing, 116 Mo. 129; Norton v. Highleyman, 88 Mo. 624. (4) Demands filed by relator for his salary during the years 1921 and 1922 in the same amount for which demands were filed during the years 1919 and 1920 are conclusive evidence that he believed he was entitled to the same salary for the years 1921 and 1922, and this mistake upon his part was a mistake of law, and not a mistake of fact and such a mistake of law now estops him from recovering the amount claimed to be due. State ex rel. v. Stonestreet, 92 Mo. App. 220; Needles v. Burk, 81 Mo. 569; Harrison v. Board of Education, 3 Mo. App. 570; Mutual Saving Trust Co. v. Enslin, 46 Mo. App. 200; Campbell v. Clark, 44 Mo. App. 249; Morrow v. Suber, 97 Mo. 155; Lincoln Trust Co. v. Third National Bank, 154 Mo. App. 89.

GRAVES, J.—Original proceeding by mandamus. Relator was elected Clerk of the Circuit Court of Crawford County, Missouri, at the November election in 1918. He discharged the duties of the said office for the four years beginning January 1, 1919, and ending December 31, 1922. During the first two years his salary was $1600 per annum, based upon the Presidential vote of 1916, multiplied by five.

The respondents are the judges of the county court of Crawford County. At the general election in 1920 the Presidential vote was 4359, which if multiplied by five would make the population of the county 21,795, and under the law the relator's salary should have been (as he claims) fixed at $1950 for the remainder of his term, there being no intervening Presidential election. Relator avers his ignorance of the population, and avers that the county court paid him the sum of $1600 per annum for such two years, although there was no settlement of the matter between him and the county court, and no intent to waive the question by him. He asks that we compel the court to issue to him a salary warrant for $700, the difference between $1600 per annum and $1950 per annum, for these last two years of his term.

, This court exercised its discretion in favor of issuing the alternative writ, because the decision of the matter was one of public importance, and because there were many other circuit clerks similarly situated. We have the following as facts in the record:

"It is hereby agreed as facts in this case in regard to the payment of the petitioner, Logan T. Moss, that at the end of each month during the years 1921 and 1922, the said Logan T. Moss filed with the county court an account of the fees collected by him in his office which was approved by the court, and he paid the amount of said fees each month into the county treasury.

"At the same time he would file an account with the court substantially as follows: .

" 'Crawford County, Missouri, to Logan T. Moss, Dr. Salary for month of ——, 1921, $133.33.'

"And the court without any question would direct that a warrant issue to him for that amount. There was no controversy between them about it, and Mr. Moss did not by any statement waive any right he might have had for a greater sum as salary. He did not claim any more, and the court never offered him any more or less.

"He simply did as the other officers of the county did; filed the account for the salary as above stated."

Further on we find this much further: "It is further agreed that at the Presidential election in Crawford County, November, 1920, the vote cast was 4360. November, 1916, the vote cast was 3024."

Respondents' return in the case is as follows:

"Now at this day come the respondents and for their return to the alternative writ issued in this cause admit that they are the duly elected, qualified and acting judges of the County Court of Crawford County, Missouri, and that Logan T. Moss was duly elected Clerk of the Circuit Court within and for Crawford County, Missouri, at the general election held in said county in November, 1918, qualifying and taking office on the first Monday in January, 1918, for a term of four years ending December 31, 1923.

"For their further return to said alternative writ issued herein respondents would respectfully state that during the entire term of office as such circuit clerk ending December 31, 1922, the said Logan T. Moss, as such circuit clerk, filed in the office of and with the clerk of the County Court of our said Crawford County, Missouri, his monthly demand and bill for his monthly salary as such clerk, stating therein the amount due him as such monthly salary as such clerk for the month next preceding the date of the filing of such demand and bill. That said demands and claims for such monthly salary were filed monthly by relator herein during the entire term of four years ending December 31, 1922, and said monthly demands and claims were taken up by the county court of our said county and allowed in full and warrants issued for the amount claimed to be due as such salary. That said monthly demands and claims were based upon a salary of $1600 per annum. That at no time during the said term of four years ending December 31, 1922, was any demand or claim of the said relator herein for such monthly salary disallowed or payment allowed upon the same in a less amount than the amount claimed to be due by relator, but each and every month the full amount claimed to be due by said relator was allowed in full. That the amount claimed to be due him

as salary as such clerk was paid to said relator upon his final settlement as such clerk. That at no time during the said term of four years ending December 31, 1922, was any claim or demand made by said relator for any salary due him as such clerk other than the monthly claim and demand for salary amounting to $1600 per year, for which demands and claims were filed and which were allowed.

"And for further return to said alternative writ issued herein, respondents would respectfully state that the census of 1910 gives to Crawford County, Missouri, a population of 13,576. That at the general election held in Crawford County, Missouri, in November, 1916, the same being a Presidential election, there were cast a total of 3024 votes. That multiplying the total number of votes cast at such election by five, as is provided shall be done in fixing the amount of salary a circuit clerk should receive, this county would be placed in that class of counties having a population of more than 15,000 and less than 20,000, and the salary of the circuit clerk would be $1600 per annum. That in fixing and determining the amount of salary to which the Clerk of the Circuit Court would be entitled to receive the salary for the entire term of four years ending December 31, 1922, was fixed and determined by said court, and not for any particular portion of said term. That the county court has refused to allow and pay demand and claim for salary, in addition the amount already paid, for the years 1921 and 1922, for the reason that under the Constitution and laws of this State the salary of the Clerk of the Circuit Court for the term ending December 31, 1922, was fixed and determined by the total vote-cast in said county at the Presidential election in November, 1916, and that the salary for the entire term of four years ending December 31, 1922, was and should be fixed and determined by said vote at said election, and for the further reason that as the full claim and demand of said relator for such salary as such Clerk of the Circuit Court of our said county, as evidenced by his monthly demands

and claims filed by him with the Clerk of the County Court of our said county, were allowed and paid in full, said relator would now be estopped from asserting any further claim and demand for additional salary not heretofore claimed to be due.

"Having fully answered said alternative writ issued herein, respondents pray judgment of the court accordingly."

Upon these pleadings and admitted facts, relator moved for judgment in this language:

"Now comes the petitioner in this cause and prays for judgment upon the return of the respondents herein for the following reasons:

"The return of the respondents does not set forth any legal reason why the salary of the relator as Clerk of the Circuit Court of Crawford County, should not be paid as demanded in the petition.

"Under the facts set forth and admitted in the petition and return, the said relator is entitled to recover from the County of Crawford the sum of seven hundred dollars yet due him on his salary as clerk of the circuit Court of Crawford County, Missouri, during the years of 1921 and 1922, $350 for each of said years, and it is the legal duty of the respondents to cause to be issued to him county warrants for the payment of said sum."

Such is the outline of the case.

I. Learned counsel (when both briefs are considered) practically agree upon the legal question to be determined in this case. The return is of some length, but when boiled down it raised but two defenses to relator's action: (1) that relator's salary was fixed for the whole term by the Presidential vote of 1916, and therefore relator had been paid in full, when he was paid $1600, for each of the four years; and (2) that even, if after the Presidential election of 1920, he was entitled to receive $1950 per year, he is estopped because he made out his monthly salary bills at the rate of $1600 per year,

and the same were allowed by the court and received by relator.

Involved with these two questions may be some side issues, which can be considered in the proper connection. The law fixing the salaries of circuit clerks is the Act of 1915 (Laws 1915, p. 378) and subsequent amendments thereto at a later date.

This law classified clerks of the circuit court according to the population of their respective counties, in the matter of fixing the salaries to be paid. Section 1 of the law concludes with this provision:

"For the purpose of this act the population of any county shall be determined by multiplying by five the total number of votes cast in such county at the last Presidential election prior to the time of such determination."

The portion of the law applicable to the contentions made in this case, so far as the amount of the salary is concerned, reads:

"In counties having a population of $15,000 persons and less than 20,000 persons, the sum of sixteen hundred dollars: in counties having a population of 20,000 persons and less than 25,000 persons, the sum of nineteen hundred and fifty dollars."

The Presidential vote in Crawford County in 1916 was 3024, which, when multiplied by five, would give the population of the county as between 15,000 and 20,000, mentioned in the first of the last two clauses of the law, quoted, supra.

The Presidential vote of said county in 1920 was 4360, which placed the population as between 20,000 and 25,000, mentioned in the last clause of the law quoted, supra. If the Presidential vote of 1916 fixed the salary of relator for the full term, then, as said, he had been fully paid, and our alternative writ should be quashed, and the permanent writ refused. If he was to have an adjustment of his salary after the election in 1920, then other questions arise, and he may be entitled to his writ. Of the several questions in their order,

II.   It should first be noted that there is in the return no technical plea of either *res adjudicata,* or accord and satisfaction.   The pleas interposed are payment in full and estoppel.   Payment in full is based upon the theory that the salary for the full term of four years is fixed by the Presidential vote of 1916.

Salary:
Annual
or For Term.

In the Act of 1915, supra, clerks of the circuit court, and their deputies, were placed upon a salary basis, rather than the old fee basis theretofore existing.   See Section 5 of Act of 1915 (Laws 1915, p. 380), whereat it is said:

"The salaries provided for in this act shall be in lieu of the aggregate amount of fees which clerks of circuit courts are permitted to retain for their services, and for the payment of deputies, under (and) by virtue of Section 10722 of the Revised Statutes 1909, as the same is amended by an act approved March 27, 1911, and as the same is amended by an act approved March 29, 1913, and so much of said section and said amendatory acts as are in conflict with or are inconsistent with this act are hereby repealed."

The real difference between the old and the new law is that in the new law, the clerk pays over all fees, and his own salary and the salaries of his deputies are paid out of the treasury, whilst under the old law he withheld and paid to himself and his deputies their respective salaries, and paid the surplus, if any, into the county treasury.   Under each law there are provisions fixing the salaries, or providing or the fixing of the salaries.   Under the old law, which fixed the salary of the clerk as per the population of the county (Sec. 10722, R. S. 1909), it is contended that it has been ruled that the salaries of such officers are annual salaries, as distinguished from either term salaries (Allen v. Cowan, 96 Mo. 193) or quarterly salaries.   [King v. Texas County, 146 Mo. 60.] In other words relator's learned counsel contends:

"The salary of the clerk is an annual salary, and is fixed at the first period in the year when he is required to

pay his fees into the treasury and claim his compensation.''

The Allen Case simply rules, that the circuit clerk collected and held the fees of his office (1) for the payment of his deputy hire and his own legal allowances for salary, and (2) the remainder for the county. To this end it was ruled that if the clerk had earned fees for a given year, and such fees were afterward collected, then he could apply them upon the salaries of his deputies and himself, if the collected fees for such year had not met and discharged such salaries for that particular year, i. e. the year in which the fees were earned. The ruling segregates the earned fees for a given year and makes them a trust fund out of which the deputy hire and clerk's salary is to be paid, and the surplus if any went to the county treasurer. It is only in this manner, that the law speaks of the salary as an annual salary.

In King v. Texas Co., 146 Mo. l. c. 69, the salary is also spoken of as "an annual compensation." But all this does not mean that the clerk's salary must be fixed and determined each year by the county court. On the other hand the old law as well as the new contemplates the determination of the salary after each presidential election. The counties might pass from one class to another at each presidential election. By this we mean that the population (to be determined under the facts and the law) might increase or decrease, and thus the county be thrown into a different class, as to salaries. [Sec. 1, Laws 1915, p. 378.] This section with its provisos makes a number of classes. Upon this point the real question in this case is, whether or not relator, who took office when the Presidential vote of 1916 was effective, is and was bound by such vote after the Presidential election of 1920. The mere fact that this court has denominated the salary of the clerk of the circuit court an annual salary, or an annual compensation, is not vital to the real issue. This real issue we take next.

III. Relator's term began on January 1, 1919, and ended on December 31, 1922. No law was passed between

those dates which increased his salary. The whole dif-
ficulty, if there be difficulty in the case,
Increase in
Salary: Near-
est Election. arises out of the fact that clerks of circuit
courts are not elected at Presidential elec-
tions, but at what we call the off-year elec-
tions, whilst the Act of 1915 fixed the method of determin-
ing the salary by Presidential election dates and data.
Were our circuit clerks elected in Presidential years,
there would not be before us the peculiar and rather dif-
ficult question we have in the instant case. This Act of
1915 was in effect when relator was elected. Under it
relator's salary was fixed for his whole term, but not in
named dollars and cents for the whole term. The effect
of this Act of 1915, was to say to relator, Your salary
shall be determined upon the Presidential vote of 1916,
until there is another Presidential election, at which time
your county may be in a lower or a higher class, accord-
ing to the population indicated by the Presidential vote.
The salary, in amount, was fixed by law as to relator's
office in any event. If his county was not subjected to a
change of class, his salary was not changed. If his county
(by a deceased population) dropped to a lower class, his
salary was fixed, and was fixed before his election, al-
though the change of class might give him a different
amount. So too if his county increased in population and
thereby passed to a higher class, the existing law (that in
force at the time of his election) fixed for him a salary.
True it was higher, but it was definitely fixed at the date
of his election. If the Act of 1915 had said that the Cir-
cuit Clerk of Crawford County elected in 1916 shall re-
ceive $1600 per year for the first two years, and $1950 per
year for the last two years of the term, there would be no
question. Sec. 8 of Article 14 of the Constitution could
not be invoked, because the salary would not be either
increased or decreased during the term. To my mind the
Act of 1915 as it now stands is no nearer a violation of
Section 8 of Article 14 of the Constitution, than the sup-
posed law. The law-makers knew the Presidential elec-
tions years, and with this knowledge classified the coun-

ties as to salaries, and provided that such salaries should be determined by the last previous Presidential vote. The salary of each class was fixed, and, as said, no subsequent law has changed the fixed salaries. The mere fact that a county passed from one class to the other does not deprive the holder of the office of the salary fixed by law, and fixed, too, at a time long prior to relator's election. In our judgment Section 8 of Article 14 of the Constitution does not preclude a recovery by relator. This because his salary was fixed by law before his election, and no law since enacted has changed it, except as we may hereafter note. The cases cited have no application to this state of facts. The exact question has never been ruled before. There is some language in King v. Texas County, supra, which might be construed to be in support of this ruling, but the question was not squarely at issue in that case.

IV.   The Act of 1915 (Sec. 10995, R. S. 1919) was amended by Act of April 1, 1921, (Laws 1921, p. 607), but as learned counsel for respondents does not treat this amendment as affecting the case, we shall not further note it. We mention it here, because we made reference to a subsequent amendment of the original act in a previous point. It was this amendment in 1921 to which we referred.

*Amendment of 1921.*

V.   Going now to the final defense interposed. Respondents urge that relator is estopped by his own conduct. This conduct is fully set out both in the pleadings and agreed facts, and we need not reiterate. As said, *res adjudicata* is not pleaded nor proven. Accord and satisfaction is neither pleaded nor proven. Respondents, in the brief, also denominated relator's act of receiving salary at the rate of $1600 per year, as a mistake of law, and urge that money lost by reason of his mistake of law cannot be recovered.

*Mistake of Law.*

To the latter proposition it should be said that the transaction, under the pleadings and facts, bespeak a mistake of both law and facts. He avers that he was ignorant

as to the population of his county, and that respondents had never entertained and determined it since the election of 1920. But for the purposes of this case it may be granted that his conduct was based upon a pure mistake of law, and yet he would not be precluded in this action. The transaction was one between public officials as to public funds. The law required relator to pay all fees collected in to the county treasury each month, and it also directed the respondents to pay him his salary in monthly installments. A mistake of law will not excuse a public official from paying out public funds, when he is dealing with other public officials. The law, in such cases, will compel the restitution of the public funds by the officer who wrongfully receives it, although paid to him under an honest mistake as to the law. This doctrine is firmly fixed in Missouri. [Lamar Township v. Lamar City, 261 Mo. 171; State ex rel. v. Scott, 270 Mo. 153.]

In the foregoing cases the action was brought to recover public funds, and in them question of the funds being paid over through an honest mistake of law is fully discussed. In the Lamar Township case the money was ordered returned by the city of Lamar to which it had been paid through a pure mistake of law. In the Scott Case this doctrine was approved. If the law will compel the restitution of public funds paid over under a pure mistake of law, the converse should also be true; i. e. that if such funds have been retained through a mistake of law, the right to their payment should not be denied.

The foregoing determines this case without a more detailed discussion of the matter of estoppel, because it is largely upon these facts that the alleged estoppel rests. However, the facts pleaded and agreed upon, do not show estoppel, as such doctrine is defined by the law. The law fixed relator's salary, and the same law made it obligatory upon respondents to pay such salary in equal monthly portions. This was the legal status of the respective parties at the beginning of the third year of service, as it had been all along. The only acts of respondent pleaded and shown by way of estoppel are (1) that he paid over

monthly the fees collected by him, and (2) that he then put in monthly bills for a salary at the rate of $1600 per year. The law compelled relator to pay over the fees collected each month. This act could not work an estoppel, so that the other matter is the sole thing invoked which would justify the plea. It does not suffice for that purpose. In 10 Ruling Case Law, sec. 25, page 697, a fair statement of the applicable rule of estoppel by acts *in pais* is thus stated:

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise except when justice to the rights of others demands. It was never intended to work a positive gain to a party. Its whole office is to protect him from a loss which, but for the estoppel, he could not escape. Consequently the estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed."

Our court has consistently recognized this rule: Driskell v. Mateer, 31 Mo. 325; Garesche v. Levering Inv. Co., 146 Mo. l. c. 451; Thompson v. Lindsay, 242 Mo. l. c. 76; Kline v. Groeschner, 280 Mo. l. c. 613.

If there was the legal obligation upon Crawford County to pay relator at the rate of $1950 per year, as we have ruled, then there is nothing in the conduct and acts of relator which occasioned said county through respondents to act to their detriment, or to change its position to its detriment. At most the county only partially discharged a legal obligation. The partial payment of a legal obligation is not payment in full and does not discharge the debt. [Zinke v. Maccabees, 275 Mo. l. c. 666.]

Upon the facts no act of relator caused Crawford County, or respondents, its agents, to do anything to the

detriment of the county or to themselves, as its agents. There was simply a part payment of a debt which the county owed under the law. Our alternative writ should be made absolute, and it is so ordered. All concur, except *White, J.,* not sitting.