WILLIAM C. WHALEN v. BUCHANAN COUNTY, Appellant.—111 S. W. (2d) 177.

Division Two, December 17, 1937.

*Maurice Hoffman* and *C. W. Meyer* for appellant.

*W. B. Duncan* for respondent.

COOLEY, C.—Action to recover $200, balance claimed to be due respondent, plaintiff below, for salary as chief deputy county clerk for ten months, March to December, 1932, inclusive. The case was one at law, tried to the court without a jury. No instructions were asked or given. The judgment was for plaintiff for $200, $20 per month for the ten months involved, and defendant appealed.

The facts are practically undisputed. From January 1, 1931, and during the time here involved, Oscar F. Lollis was County Clerk of Buchanan County. As of date, January 1, 1931, he submitted in writing to the county court his appointment of deputies, which, with the "O. K." of the presiding judge of the court, reads:

"Oscar F. Lollis, County Clerk.

"Buchanan County, St. Joseph, Mo., Jan. 1, 1931.

"To the Honorable County Court,

"Gentlemen:

"I have the honor to, and do herewith submit to you my appointments for the ensuing year beginning January 1st, 1931, as follows:

"W. C. Whalen, Chief Deputy.

"J. A. Timberlake, Class A Deputy.

"Mont Finch, Class A Deputy.

"Cleve Morgan, Class A Deputy.

"Thos. B. Llafet, Class, A Deputy.

"Mary Ferneau, Class A Deputy.

"Hoping that you will see your way clear to approve the above mentioned appointees and wishing you a lot of success throughout your administration, I am

"Yours truly,

Oscar F. Lollis,

"OFL/MF                                          County Clerk.

"O. K.                    H. J. Boyle,

"Presiding Judge."

The above-quoted instrument was plaintiff's Exhibit 1 (to be hereafter mentioned) and was admitted in evidence over defendant's objection.

On January 10, 1931, the county court made the following record entry upon its records:

"Oscar Lollis, County Clerk appoints Wm. C. Whalen, J. A. Timberlake, Mont Finch, Cleve Morgan, Thos. B. Llafet and Mary Ferneau as deputies elective January 1st, 1931. Same approved by the court."

No other record entry relative to Mr. Whalen appears upon the county court's records, nor is any other or further appointment of Whalen by the county clerk shown. He continued to act as chief deputy, discharging all the duties of that office, until Lollis resigned as county clerk in May, 1934. Lollis never changed his appointment or status as chief clerk to "any other class of deputy."

For fourteen months, January 1, 1931 to March 1, 1932, Whalen was paid $160 per month at the statutory rate of $1920 per year. (The statute will later be referred to.) For the next ten months, March to December, 1932, inclusive, the time here involved, he was paid $140 per month, the statutory salary of a Class A deputy. (It

does not appear how much he was paid after December, 1932.) In the "vouchers," made out by the county clerk, for the ten months involved the amount to be paid Whalen is stated as $140. To illustrate:

"Payroll Co. Clerk—Mar. 1932.

| | |
|---|---|
| Oscar F. Lollis | $291.67 |
| W. C. Whalen | 140.00 |
| Thos. B. Llafet | 100.00 |
| Mont Finch | 100.00 |
| Mary Ferneau | 100.00 |
| J. A. Timberlake | 100.00 |
| Jack Curtin | 100.00 |

"OK Oscar F. Lollis, Co. Clk.

"OK Mar. 31, 1932, $931.67

"E. P. Maupin, County Auditor"

In four of those vouchers, those for April, October, November and December, 1932, Whalen's name is followed, respectively, by the designation, "Class A Dep.," "Class A," "Class A Deputy" and "Class A Deputy," followed by the amount to be paid, $140. In the other six only his name appears, followed by said stated amount of $140. In some of those ten vouchers other deputies are listed to receive $100 per month, in others $125 per month. Where listed to receive $125, sometimes said other deputies are referred to as Class B deputies (whereas they were appointed as Class A deputies), sometimes their classification is not mentioned.

Both Lollis and plaintiff testified that the reduction of Whalen's salary was made over the protest of both. Plaintiff said he was never notified of any change reducing him from chief deputy to Class A deputy,—"just a reduction of salary" made over his protest. Lollis said that the reduction was made over his protest, that he had never reduced Whalen from chief deputy to Class A deputy, and that the only reason he had made out said ten vouchers as he did, calling for $140 to Whalen instead of $160, was that "The County Court only allowed my office, under the budget set-up by the County Court, a certain stipulated sum, the exact amount of which I cannot say right now, but anyway, the amount that they set out was not sufficient to pay the salary of Chief Deputy, so on this voucher here it calls for $140.00, which is the pay of a Class A Deputy. Well, there is no matter of record I don't think, in the County Clerk's office that shows that he was ever reduced from Chief Deputy to Class A Deputy."

In this connection we add there was no evidence as to the "budget set-up by the County Court" or as to the amount provided for the County Clerk's office, except the inferential reference thereto in the above quoted excerpt from Lollis' testimony.

On this record we are of opinion that the judgment of the

circuit court is right. At the time here involved there was in force, applying to Buchanan County, Section 11856, Revised Statutes 1929 (Mo. Stat. Ann., p. 7050), reading as follows:

"Sec. 11856. Deputies allowed and salaries to be paid.—The collector of revenue, clerk of the circuit and criminal courts, clerk of the county court, county highway engineer and county assessor in any such county shall each be entitled to one chief deputy, which chief deputy shall be appointed by said official and be paid a salary of nineteen hundred and twenty dollars per year, to be paid in the same manner as the officers."

The next section, 11857, provides that the collector of revenue, clerk of the circuit court, assessor, recorder of deeds, county treasurer, "and any other county officer," shall each be entitled "to such a number of deputies and assistants, to be appointed by said county officer," as the county court may deem necessary, which deputies and assistants are to be divided into Classes A, B and C, defining each and fixing the salary of each. Class A deputies are therein defined as "Assistants or deputies" and their salaries fixed at $1680 per year. Lollis, in his testimony, explained the difference between the duties devolving upon and performed by a "chief deputy" and those of other deputies, showing that the duties of chief deputy were more responsible and onerous than those of Class A or other deputies. For some reason the County Clerk is not specifically mentioned in Section 11857, supra. But assuming for the purpose of the case that he is included in the general language "any other county officer," the statutory provisions referred to seem to make a distinction between the "chief deputy" provided for in Section 11856 and the deputies and assistants contemplated by Section 11857. Statutes relating to the same subject are to be construed together and, if possible, harmonized and effect given to all provisions. Section 11856 authorizes the county clerk, not the county court, to appoint a chief deputy and fixes his salary. Whalen was appointed chief deputy pursuant to that statute. While his original appointment read only for one year he continued to act thereunder and was recognized thereafter as holding under that appointment. Clearly he and the county clerk who had appointed him considered that he continued under that appointment as chief deputy. Even the county court continued so to regard and treat him for at least two months after the expiration of the named one year, viz., during January and February, 1932, for which two months he was paid as for chief deputy. The question that he was appointed as chief deputy for only one year is not here raised, was not raised or suggested below, and may be treated as not in the case. Lollis, the county clerk, never revoked that appointment nor made any new appointment of a chief deputy, or order changing plaintiff's status. On the contrary he continued

to recognize plaintiff as his chief deputy. There was no order of record of the county court purporting to change plaintiff's status as chief deputy, if that body had authority to make such change.

Appellant in its brief presents two contentions: First that the court erred in admitting plaintiff's Exhibit 1, and, second, that plaintiff having, for the ten months in question, received and accepted pay as for a Class A deputy he is estopped from claiming more.

On the first proposition appellant argues that the county court, being a court of record, can only speak by its record and, from the cases cited, it would seem the further thought is intended to be advanced that its contracts must be in writing. It is further argued that the county court had the right to change the classification of the clerk's deputies, with the result of changing their statutory compensation, and did so (though making no order of record to that effect), by simply paying them lower salaries.

In our opinion said Exhibit 1 was properly admitted in evidence. In the first place Section 11856, supra, gives the *county clerk* the right to appoint a chief deputy and fixes the salary. It says nothing about classification. Section 11857 does provide for classification and fixes salaries for each class. It seems to imply, also, that the county court may exercise discretion as to the number of deputies and assistants the clerk may appoint. But if we are to give full effect to both sections, Section 11857 cannot be held to authorize "classification," as therein provided, of a "chief deputy," provided for by Section 11856, as a "Class A" deputy under Section 11857. because Section 11856 authorizes the *clerk* to appoint a "chief deputy" at a salary of $1920 per year, leaving, if construed by itself, nothing for the county court to do but pay the salary fixed by the statute, while Section 11857 fixes the salary of "Class A" deputies at $1680 per year and lower salaries for deputies or assistants in Classes B and C therein provided for. If Section 11857 (assuming that it applies to county clerks) be construed to mean *all* deputies, including the "chief deputy" provided for in Section 11856, there would be repugnancy between the two sections. By construing Section 11857 (as applied to county clerks) as referring to deputies and assistants other than the "chief deputy" specifically provided for by Section 11856, such repugnancy is avoided. We so construe it.

For another reason said Exhibit 1 was properly admitted in evidence. It named respondent as "chief deputy" and gave the names and classification of the other deputies appointed by the county clerk. Those appointments were approved by the county court by its order of record of January 10, 1931. That record order referred to said Exhibit 1, but without stating the names or classification of

the persons therein appointed. That paper,—the clerk's appointment of deputies,—was addressed to the county court and was on file in the archives of that body. It explains what the county court was approving by its order of record of January 10th, and, we think, may be considered in effect as part of the order. Without it said order would not be understandable. With it the record entry is clear. Under the facts and circumstances of this case this conclusion seems to us the common sense of the matter and not in conflict with established rules governing county courts and we think that, in principle, it finds support in Riley v. Pettis County, 96 Mo. 318, 9 S. W. 906.

■ As to the second proposition, estoppel, plaintiff is not barred of recovery on that ground. Estoppel is not pleaded and in order to be available as a defense it must be specifically pleaded. [Missouri Cattle Loan Co. v. Great Southern Life Ins. Co., 330 Mo. 988, 1011, 52 S. W. (2d) 1, 11 (7-9), and cases cited.] We might thus summarily dispose of this contention. But, further, the facts do not show estoppel. There was here no evidence of settlement, as there was in Galbreath v. City of Moberly, 80 Mo. 484, cited and strongly relied upon by appellant. The county court simply paid plaintiff less than he was entitled to and he accepted it under protest. The county court, or the county for which it was acting, was not misled to its detriment into action to its prejudice induced by plaintiff. [See on this subject, State ex rel. Moss v. Hamilton et al., 303 Mo. 302, 260 S. W. 466 (en banc), and Missouri Cattle Loan Co. v. Ins. Co., supra, and cases cited.] State ex rel. Moss v. Hamilton et al., supra, we think, is particularly in point. There the relator, Moss, had sued for balance of salary claimed to be due him as circuit clerk. For the first two years of his term of office he had been paid at the rate of $1600 per year, according to the population of the county as determined by then existing statutes. In the middle of his elective four-year term there was a presidential election, the vote at which, according to the then statutory method of computating population and determining salary of circuit clerks, entitled Moss to larger compensation. He, however, continued to pay over fees collected by him as circuit clerk (as by statute required) and put in bills for salary as clerk at the old rate of $1600 per year, which were paid. The later presidential vote entitled him, under the then statutes, to $1950 per year instead of the original $1600 per year. He sued and recovered for the difference for the last two years, $700. He claimed that he had not known of *the fact* of the change of population and consequent change of the amount of salary he was entitled to. But this court, on the question of estoppel, does not seem to have placed its decision on the ground of such alleged mistake *of fact*. After holding that the mistake, though considered

as one of law, would not preclude the relator, the transaction being between public officials as to the public funds, and discussing the principles of estoppel, we said (303 Mo. 302, 260 S. W. l. c. 471 (7)):

"If there was the legal obligation upon Crawford County to pay relator at the rate of $1950 per year, as we have ruled, then there is nothing in the conduct and acts of relator which occasioned said county through respondents to act to their detriment, or to change its position to its detriment. At most the county only partially discharged a legal obligation. The partial payment of a legal obligation is not payment in full, and does not discharge the debt. [Zinke v. Maccabees, 275 Mo. l. c. 666, 205 S. W. l.]

"Upon the facts no act of relator caused Crawford County, or respondents, its agents, to do anything to the detriment of the county or to themselves, as its agents. There was simply a part payment of a debt which the county owed under the law."

The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the Judges concur.