(No. 4510—)

JOHN H. CLAYTON, JR., Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed September 12, 1952.*

JOHN W. FRIBLEY, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

DELANEY, J.

John H. Clayton, Jr., claimant, filed his complaint herein on April 24, 1952, alleging that he is the duly elected, qualified, and acting Judge of the City Court of Johnston City, Illinois, and has been since May 17, 1949. He further alleges that the 1940 Federal census disclosed the population of Johnston City to be 5,418 persons, and that under the provisions of Chap. 37, Par. 355, Ill. Rev. Stat., 1947, he was entitled to a salary of $2,500.00 per year, and that such salary was, in fact, paid until November 16, 1951.

Claimant further alleges that on November 16, 1951 he was advised by the Auditor of Public Accounts of the State of Illinois that inasmuch as the 1950 Federal census disclosed that the City of Johnston City had a population of 4,479 persons, his salary would be reduced to $1,000.00 per annum, which was the amount provided for judges of city courts of cities under 5,000 population. Claimant further alleges that, since November 16, 1951, he has been paid $83.33 per month salary as the Judge of the City Court of Johnston City, Illinois, and brings this action to recover the difference between $83.33 per month and $208.33 per month to which he contends he is entitled. In this claim he seeks to recover for the period from November 16, 1951 to April 16, 1952, in the sum of $625.00.

The statutes in force at the time of the election of the claimant as Judge of the City Court of Johnston City, Illinois provided an annual salary for judges of city courts, based upon a sliding scale, in the words and figures, in part, as follows:

"The judges of said court shall be allowed and receive as an annual salary in lieu of all other fees, perquisites or benefits whatsoever, in cities or towns having a population not exceeding five thousand (5,000) inhabitants, the sum of one thousand dollars ($1,000); and in cities or towns having more than five thousand

(5,000) and not exceeding eight thousand (8,000) inhabitants, the sum of twenty-five hundred dollars ($2,500);" (Chapter 37, Par. 355, Ill. Rev. Stat., 1947.)

Provision was also made to determine the population, as follows:

"The number of inhabitants shall be determined by reference to the Federal census, or a census taken by the city, village or town authorities." (Chap. 37, Par. 353, Ill. Rev. Stat., 1947).

It is clear that the salary of a city judge cannot be increased or decreased by any action after his election. (*Wolf* vs. *Holt*, 210 Ill. 50.) However, where a statute provides a graduated scale at the time of the election to office, the salary may vary during the term according to the population or property values. This rule was stated by the Supreme Court of Indiana in *Crowe* vs. *Board of Com'rs.*, 210 Ind. 404, 3 N.E. (2d) 76, at page 78, as follows:

"There is no merit in the contention that an increase in the salary of an officer during his term is involved. The salary was fixed before he was elected. The amount he was to receive from time to time was made to depend upon the population of the county. It is as though the statute in existence when the officer was elected had provided that he should receive $1,000 the first year, and $2,000 the second year of his term. In the statute under consideration the Legislature chose to make the amount of salary dependent upon population shown by the United States census. It might continue during the latter part of the term the same as before the census. It might be more if the population increased. It might be less if it decreased."

It is held in many jurisdictions that a variation in compensation of an officer automatically brought about by a change in population or valuation of property does not violate a constitutional provision prohibiting an increase or decrease in compensation during the officer's term. Additional authorities following this view are:

*Yuma County* vs. *Sturgess*, 15 Ariz. 538, 140 P. 504;
. *Puterbaugh* vs. *Wadham*, 152 Cal. 611, 123 P. 804;
*State ex rel Moss* vs. *Hamilton*, 303 Mo. 302, 260 S.W. 466;
*State ex rel Harvey* vs. *Linville*, 318 Mo. 698, 300 S.W. 1066;
*State ex rel Jaumotte* vs. *Zimmerman*, 106 Mont. 464, 73 P. (2d) 548;

*Board of County Com'rs.* vs. *Mathews*, 147 Okla. 296, 296 P. 481;
*Drolte* vs. *Board of County Com'rs.*, 176 Okla. 622, 56 P (2d) 800;
*State ex rel Mack* vs. *Guckenberger*, 139 Ohio St. 273, 39 N.E. (2d) 840;
*Derhammer* vs. *Board of County Com'rs.*, 83 N.E. (2d) 400.

The Supreme Court of Ohio in *State ex rel Mack* vs. *Guckenberger*, 39 N.E. (2d) 840, held that a statute effective before the term of a judge commenced could automatically increase or decrease his compensation by reason of a fluctuation of population as shown by the Federal census without conflicting with a constitutional limitation, which provided that the compensation could not be increased or diminished during his term of office. In this case the Court said at page 843:

"The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last Federal census becoming effective during his term."

The provisions of the Illinois Constitution prohibiting the increase or decrease in salary during the term of office are based upon similar reasons, as appears from the opinion of the Illinois Supreme Court in the case of *People* vs. *Sweitzer*, 280 Ill. 436, wherein the Court said at page 442:

"The Constitution expressly prohibits the Legislature from increasing the salaries of circuit judges, and, in fact, of all State officers, during the terms for which they are elected. The theory of the framers of the Constitution was to make the three branches of government, the legislative, executive and judicial, separate and independent of each other, as far as possible. The power to fix the salaries of State officers is in the legislative branch of the government, the duty to enforce acts of the legislature is in the executive branch, and the power to construe the acts of the legislature is in the judiciary. The acts of the officers of each branch, while such officers are in power, should not be made to depend upon or be influenced by the acts of another branch, nor should there be anything in the conduct of either that

would even give rise to a suspicion of such a thing as coercion by reducing salaries or a reciprocal interchange of favors by increasing salaries, hence the reason for the constitutional provision putting it beyond the power of the Legislature to increase or diminish the salaries of State officers in office and in power. This is fully borne out by the Debates and Proceedings of the Constitutional Convention as reported in volume 1, pages 1015, 1018, 1019, 1020, 1058 and 1059, in which the practices which had theretofore obtained in securing, or attempting to secure, increases in salaries by certain State officers were set forth forcibly and at length."

None of the evils sought to be eliminated by the constitutional provisions can possibly arise where the change in compensation is automatically accomplished through the happening of a contingency, such as a fluctuation in population over which the office holder has no control, as is the case now before the Court. It is submitted that the Auditor of Public Accounts properly reduced the amount of the payments to the claimant as Judge of the City Court of Johnston City, Illinois, based upon the 1950 Federal census and the statute providing for such salary. As the claimant has received the salary to which he was entitled by the statutory provisions in force at the time of his election, his complaint herein does not state a cause of action, and should be dismissed.

When payment is made to an officer or employee of the State of Illinois for services rendered for specific periods, such payment is payment in full, and no additional compensation may be paid for the same period. Par. 145, Sub-par. (3), of Chap. 127 provides as follows:

"Amounts paid from appropriations for personal services of any officer or employee of the State, either temporary or regular, shall be considered as full payment for all services rendered between the dates specified in the payroll or other voucher, and no additional sum shall be paid to such officer or employee from any lump sum appropriation, appropriation for extra help or other purpose, or any accumulated balances in specific appropriations, which payments would constitute in fact an additional payment for work already performed, and for which remuneration had already been made."

Section 19, Article IV, of the Illinois Constitution provides:

"The General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, nor authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreement or contracts shall be null and void; Provided, the General Assembly may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion."

Under the above quoted provisions, it has long been the rule in the Court of Claims that claimants cannot recover for services rendered the State of Illinois during stated periods after warrants were accepted for such periods. The Court said in *Hollender, Et Al* vs. *State*, 14 C.C.R. 40, at page 43:

"Under this provision of the Statute, it was held in *Mills* vs. *State*, 9 C.C.R. 69, that a claimant cannot accept warrants purported to cover the full amount due him for services during stated periods, and, thereafter, when his active service has ended, obtain an award from the State for an additional amount for those periods for which he had apparently been paid for services in full."

Some of the additional cases in which this rule has been followed by the Illinois Court of Claims are:

*Shields and Gruber* vs. *State*, 14 C.C.R. 136;
*Hollender, Et Al* vs. *State*, 14 C.C.R. 40;
*Klapman, Et Al* vs. *State*, 13 C.C.R. 139;
*Agsten, Et Al* vs. *State*, 13 C.C.R. 8;
*Gholson* vs. *State*, 12 C.C.R. 26;
*Smith* vs. *State*, 11 C.C.R. 374;
*Novak* vs. *State*, 10 C.C.R. 258;
*Broderic* vs. *State*, 9 C.C.R. 458;
*Mills* vs. *State*, 9 C.C.R. 69;
*Hunter* vs. *State*, 9 C.C.R. 1.

The record consists of the complaint, motion of respondent for an extension of thirty days in which to file pleadings, order of the Chief Justice granting respondent an extension of time in which to file pleadings, motion of respondent for leave to file instanter its motion to dismiss, together with points and authorities

in support thereof, and motion of respondent to dismiss, for the reason that the complaint is substantially insufficient in law to state a cause of action.

Inasmuch as it appears on its face that the complaint is insufficient in law to state a cause of action, the motion of respondent to dismiss the complaint is hereby sustained, and the case is dismissed.